(Decided Jan. 8th, 1864.)

---

The County Commissioners of Anne Arundel County *vs.* Richard Duckett.

County Commissioners—Duties, Powers and Responsibilities of.—In an action against the County Commissioners of Anne Arundel County to recover the value of a horse killed while being driven over one of the public roads of said county, alleged to have been in bad repair, it was Held:

That the duties imposed by law upon the County Commissioners being defined in the most comprehensive terms, and the law having supplied them with ample means, and armed them with coercive power sufficient to meet and sustain their liabilities, they are responsible for special damage resulting from the non-repair of the public roads by their officers, the road supervisors.

Municipal Corporations—Duties, Powers and Responsibilities of.—A municipal corporation in the exercise of those legislative powers which

Co. Comm's of A. A. Co. vs. Duckett.

it holds for public purposes, and as part of the Government of the country, enjoys the exemption of Government from responsibility for its own acts and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power.

But when in the exercise of those private franchises which belong to it as a creature of the law, it is responsible for the acts of those who are in law its agents.

"When a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words, power and authority, in such case, may be conconstrued duty and obligation."

Where the duty was imposed by statute, and no remedy prescribed, the right of action accrued at common law, otherwise there would be a right without a remedy.

"Wherever an indictment lies for non-repair, an action on the case will lie at the suit of the party sustaining any peculiar damage."

APPEAL from the Circuit Court for Anne Arundel County:

This was an action brought on the 10th of August 1859, by the appellee against the appellant, to recover the value of a horse killed while being driven over one of the public roads in Anne Arundel County, alleged to be in bad repair.

The declaration avers that, the defendants "are bound to keep the public roads of said county in repair and in such a state as will permit safe travel over them; that one of the public roads in said county, to wit: the public road which leads from Anne Arundel County across the Governor's Bridge to Prince George's County, on the Anne Arundel side near the said bridge, was negligently suffered, on or about the 1st day of April 1859, by the defendants, to be out of repair and unmended, so as to be impassible with safety, whereby the plaintiff in traveling on said road with his wagon and horses, and using due care, had one of his horses killed; and the plaintiff claims $300."

The defendants demurred to this declaration:

1st. Because by the Constitution and Laws of this State, the duty and responsibility of keeping the public county roads in repair, is devolved upon Road Supervisors elected by the qualified voters of each election district of the several counties, and not upon the County Commissioners,

and the defendants in fact say, that one Andrew Nichols was, at the time the alleged injury to the plaintiff's horse occurred, the duly elected Road Supervisor for the Second Election District of Anne Arundel County, and the road mentioned in said declaration, at the place where the said injury happened, was within the limits of said election district, and the duty and responsibility of keeping the same in repair, was by the Constitution and Laws aforesaid, devolved upon the said Andrew Nichols and not upon these defendants.

2nd. Because by the Constitution and Laws of this State, the defendants are not responsible for the want of repair of the road mentioned in the declaration, nor for any injury which may have resulted therefrom to the plaintiff.

This demurrer was overruled, and the defendants then pleaded seven pleas, upon all of which, save the 5th and 6th, the plaintiff joined issue, and to these demurred. The pleas thus demurred to are as follows:

5th. And, for a fifth plea these defendants say, that they are not bound to keep the public roads of said county in repair, and they aver that the duty of keeping the same in repair, is by the Constitution and Laws devolved upon the Road Supervisors.

6th. And for a sixth plea the defendants say, that the road on which the alleged injury to the plaintiff's horse is supposed to have occurred, is within the limits of the Second Election District of Anne Arundel County, and that at the time of the said supposed injury, there was a Road Supervisor for said district duly elected by the qualified voters thereof, and that the defendants duly issued a commission to said Road Supervisor according to the 2nd section of the Act of 1853, ch. 300, in which commission, among other things, is set forth the amount of money, to wit: the sum of $1000, appropriated by the defendants for the repairs of the roads and bridges in said district for the year within which the alleged injury to the plaintiff's horse is supposed to have occurred, and the defendants

aver, that said sum so appropriated by them, was abundantly sufficient to keep said road and bridges in good repair during said year; and they further aver, that said Road Supervisor duly made report to these defendants as provided for by the 5th section of said Act of 1853, and in said report, among other requirements of said section, he reported, that the roads and bridges under his supervision in said district were in good repair during said year; and the defendants further aver, that they have faithfully and fully discharged all the duties imposed upon them by said Act of 1853, in reference to said roads.

The plaintiff demurred to the 5th plea, "because the defendants are bound to keep the public roads of the said county in repair, and that the duty of keeping the same in repair, devolved by the Constitution and Laws of the State upon the Road Supervisors, does not discharge the defendants from the performance of the like duty or exonerate them from any liability resulting from the non-performance of the same."

To the 6th plea: 1st, because the same in manner and form as pleaded, does not set forth sufficient ground of defence; 2nd, because the same in manner and form as pleaded, is bad for multiplicity, in this, that several and distinct matters of defence are thereby pleaded in bar of the plaintiff's action; and 3rd, because the same is so drawn in manner and form that the plaintiff cannot take any certain issue upon the said plea.

The Court sustained the demurrers to these pleas, and the verdict and judgment being in favor of the plaintiff upon the issues of fact, the defendants appealed.

*O. Miller* and *Frank H. Stockett*, for the appellants, argued:

That the duty and responsibility of keeping the public roads in repair, is not devolved upon county commissioners by any such certain and precise provision of law as to make them

responsible to individuals for injuries resulting for the bad state or condition of such roads, and that therefore the demurrer to the declaration should have been sustained, and the plaintiff's demurrers to the 5th and 6th pleas should have been overruled. In support of this position, reference is made to the case of *Bartlett vs. Crozier*, 15 *Johns.*, 250, and same case in the Court of Errors in 17 *Johns.*, 439, and especially to the very able opinion of Chancellor Kent in the latter case, which was adopted by the unanimous opinion of the Court of Errors. Reference is also made to the English authorities cited by the chancellor in that opinion. As to the provisions of our Constitution and laws upon the subject, see Constitution, Art. 7, secs. 8, 9. Act of 1853, chaps. 220, 239 and 300. Act of 1794, ch. 52. Act of 1795, ch. 43. 1856, chs. 317 and 349 and 204. Act of 1846, ch. 301.

*Daniel Clarke*, for the appellee :

Upon the part of the appellee it will be insisted, that the Court below was right in overruling the demurrer filed by the defendants to the plaintiff's declaration, and in sustaining the plaintiff's demurrers to the 5th and 6th pleas of the defendants.

It will be argued upon the part of the appellee:

1st. That by the Constitution of the State, and the Acts of Assembly passed in pursuance thereof, the County Commissioners of each county are "constituted and declared to be a corporation and body politic," with charge and control over the county roads and bridges in their respective counties. Constitution, Art. 7, sec. 8. Act of 1853, chaps. 300, 339.

2nd. That by the Constitution and Acts of Assembly passed in pursuance thereof, the Road Supervisors are required to "superintend and direct the repairs of the public county roads in such manner and under such regulations and restrictions as may be directed" by the County Commissioners of the respective counties, and they act in their

official capacity as the ministerial agents of the County Commissioners. Constitution, Art 7, sec. 9. Act of 1853, ch. 239. Act of 1853, ch. 300. *Dean vs. New Milford*, 17 *Johns.*, 446, 447. 5 *Watts & Serg.*, 545. This case is an answer to the argument of the appellant, and is to the effect that where the duty to be performed is by a subordinate, elected independently of the commissioners not appointed by them, the commissioners are not responsible at law for his acts or his omissions. *Mayor & City Council vs. Board of Police*, 15 *Md. Rep.*, 376. See also 3 *Hill*, 531.

3rd. The defendants being constituted a "corporation or body politic," can be sued *civiliter* for *torts* or injuries arising either from their own acts and omissions, or the acts and omissions of their ministerial agents. *Mayor & C. C. of Balto. vs. Marriott*, 9 *Md. Rep.*, 160, and cases referred to, p. 156. *Mayor & C. C. of Balto. vs. Pennington*, 15 *Md. Rep.*, 12. *Mayor of Lynn vs. Turner*, *Cowp.*, 86. *Henly vs. Mayor of Lynn*, 3 *B. & Ad.*, 77. *Id.*, 1 *Bing. N. C.*, 222. *Stetson vs. Fascon*, 19 *Pick.*, 147. *City of Erie vs. Schwingle*, 22 *Penn.*, 384. *Delmonico vs. New York City*, 1 *Sandf.*, 222. 2 *T. R.*, 669, cited by appellant, was decided on points not at issue in this case, viz: that the defendant was not a corporation, &c. 4 *Wright's Ohio Rep.*, 517.

4th. That the charge and control of the public roads in Anne Arundel county being imposed upon the defendants, with power in the supervisors to superintend and direct their repairs in such manner and under such regulations and restrictions as the defendants may direct, the duty and responsibility of keeping the public roads in repair attach to the defendants, and they are liable at the suit of an individual who sustains special damage by such omission to keep the roads in good repair, whether such omission be the result of misconduct, malfeasance in office, or neglect of the defendants or their ministerial agents, the Road Supervisors. The defendants cannot discharge themselves from liability for injuries resulting to an individual, by

averring that they have discharged their *quasi* legislative duties, but they must require and enforce the performance of the ministerial duties of the Road Supervisor. *Mayor & C. C. of Balto. vs. Marriott,* 9 *Md. Rep.,* 178. *Mayor & C. C. of Balto. vs. Pennington,* 15 *Md. Rep.,* 12. *People vs. Albany,* 11 *Wend.,* 539. *Feuze vs. New York,* 3 *Hill,* 612. *Mann vs. Fearson,* 9 *How.,* 248. 1796, ch. 68, sec. 2, *Watson vs. Proprietors,* 2 *Shipley,* 203. *Riddle vs. Proprietors of Lisbon Bridge,* 7 *Mass.,* 169. *Dean vs. New Milford,* 5 *Watts & Serg.,* 545. *Henley vs. Mayor of Lynn,* 5 *Bing.,* 91. *Mayor of Lynn vs. Turner, Cowp.,* 86. *Levy vs. Mayor of New York,* 1 *Sand.,* 465. *Boyland vs. Mayor of New York,* 1 *Sand.,* 27. *City of Memphis vs. Loper,* 9 *Hump.,* 757. *City of Erie vs. Schwingle,* 10 *Harris,* 384. *City of Pittsburg vs. Grier,* 16 *Harris,* 54. *Ross vs. City of Madison,* 1 *Indiana,* 98. *Mc-Comos vs. Town Council of Akim,* 15 *Ohio,* 474. *Rhodes vs. City of Cleveland,* 10 *Ohio,* 159. *Paine vs. Commissioners of Portage County, Wright R.,* 417. *Goodloe vs. Cincinnati,* 4 *Ohio R.,* 500. *Davis vs. Mayor of New York,* 1 *Duer,* 452. *Delmonico vs. Mayor of New York,* 1 *Sandf.,* 222. *Bayley vs. Mayor of New York,* 3 *Hill,* 531. *Baker vs. City of Boston,* 12 *Pick.,* 184. 19 *Pick.,* 511.

Bowie, C. J., delivered the opinion of this Court:

The appellants were sued by the appellee on the 10th of August 1859, for negligently suffering a certain public road in said county to be out of repair and unmended, so as to be impassable with safety, whereby the appellee in traveling on said road with wagon and horses and using due care, had one of his horses killed. The appellants demurred to the declaration, which demurrer being overruled, they pleaded several pleas, among others: "That they are not bound to keep the public roads of said county in repair, and they aver that the duty of keeping the same in repair is by the Constitution and Laws devolved upon the Road

Supervisors." They filed also, another plea, making the same defence more in detail. The appellee demurred to these pleas, the Court sustained the demurrers, and the verdict and judgment being in favor of the appellee, the defendants appealed.

The question presented is, whether under the Constitution and Laws of this State, the appellants are liable in this action.

The appellants contend, that the duty and responsibility of keeping the public roads in repair, is not devolved upon them by any such certain and precise provision of law, as to make them responsible to individuals, for injuries resulting from the bad state or condition of the roads, and that therefore, the demurrer to the declaration should have been sustained and the demurrers to the pleas overruled. The appellees maintain the converse of this proposition.

The Act of 1853, ch. 239, sec. 1, constitutes and declares the County Commissioners, "a corporation and body politic," and enacts, *"they shall have charge of and control over the property owned by the county, and over county roads and bridges."* They may sue and be sued, levy all needful taxes on the assessable property within the county liable to taxation, and pay and discharge all claims on or against the county, which have been expressly or impliedly authorized by law; 1853, ch. 239.

The Supervisors of roads being made elective by the people by Art. 7, sec 9, of the Constitution, in such manner as should be prescribed by the Legislature, the Act of 1853, ch. 300, entitled, "An Act to provide for the election of Supervisors" was passed, prescribing the mode of their election, qualification and duties. By that Act, after the election of the Supervisors has been duly certified to by the commissioners of the county, the latter are required to issue to each elected Supervisor, a commission setting forth the time for which, and the election district of which he has been elected Road Supervisor, the amount of compensation he shall be entitled to receive, the amount of

money, if any appropriated for the repair of the roads and bridges which may be under his supervision, &c., each Road Supervisor is required to report annually to the County Commissioners, the general condition of the roads.

The County Commissioners have power to revoke the commission of any Road Supervisor, at any time, for neglect of duty or malfeasance in office, and to fill any vacancy that may occur for any cause; 1853, ch. 300.

This synopsis of the laws, is sufficient to show the relative powers and duties of the commissioners of the counties and supervisors of roads, and the legal obligations which may result from their relation to each other.

This is the first instance, as far as the records of this Court disclose, in which a suit has been instituted against the commissioners of the county as such, or their predecessors the Levy Court, for damages, resulting to an individual, from the neglect or omission to repair the public roads. The novelty of the action, as well as the important consequences which may follow, if it is maintainable, give it unusual interest. That no such claim has been heretofore set up, it will be seen, has been much dwelt upon by a distinguished jurist as an argument against its validity. We are not called upon to establish a new principle, but to apply one already well established, to a new combination of circumstances. Principles are of universal obligation, unless restrained by positive law. Could considerations of public policy be allowed to influence the Courts in matters of strict law, much might be said on either side of this question, it is our duty, however, to adhere to the decisions in similar cases in this and other States.

"With regard to the liability of a public municipal corporation for the acts of its officers, the distinction is, between an exercise of those legislative powers which it holds for public purposes, and as part of the government of the country, and those private franchises which belong to it, as a creature of the law; within the sphere of the former, it enjoys the exemption of the government, from responsi-

bility for its own acts, and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power. *White vs. City Council,* 2 *Will. So. Car.* 571. *Martin vs. Mayor of Brooklyn,* 6 *Hill's N. Y.,* 545, 550. *The Mayor of the City of N. Y. vs. Furze,* 3 *Hill,* 612, 618. But in regard to the latter, it is responsible for the acts of those who are in law its agents, though they may not be appointed by itself. *Bailey vs. The Mayor of the City of New York,* 3 *Hill, N. Y.,* 532. *Same case on Error,* 2 *Denio,* 434, 450. *Thayer vs. Boston,* 18 *Pick.,* 511. "But the application of these principles is confessedly nice." 1 *Am. Lead. Ca.,* 622, and cases there cited.

The liability of public municipal corporations for damages arising from neglect to prevent and remove nuisances, was placed by this Court in the case of *The Mayor & City Council vs. Marriott,* on the ground that the statutes of this State fixed the liability of the defendants, not that the defendants were liable at common law. 9 *Md. Rep.,* 178. The Act of 1796, ch. 68, providing, "that the corporation of the City of Baltimore shall have full power and authority to enact and pass all laws and ordinances necessary to preserve the health of the city, and to prevent and remove nuisances," was relied on as conferring the authority on the defendants in that case, and it was declared, that "it is a well settled principle, that when a statute confers a power upon a corporation, to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words, power and authority, in such case, may be construed duty and obligation." *Vide* also 15 *Md. Rep.,* 173, *The Mayor vs. Pendleton & Harlan. Id.,* 174. In the former case, as in this, it was contended that the defendants were invested with a legislative discretion, which they had the liberty of exercising as their sense of duty to their constituents dictated, without coercion or liability for its non-user. This Court did not sustain that pretension, but held the power in question to

be a ministeral one, which the corporation was obliged to exercise for the public good, and in default of its proper exercise, as a common law consequence, it was liable to an action for damages. In other words, that where a duty was imposed by statute, and no remedy prescribed, the right of action accrued at common law, otherwise there would be a right without a remedy. The appellants in this case are, by the words of the Act of 1853, ch. 239, constituted a corporation, with "charge and control over the public roads." They are authorized "to levy all needful taxes" and "to pay and discharge all claims on or against the county which have been expressly or impliedly authorized by law." Hence they are authorized to levy the amount necessary for the repairs of public roads, and are expressly required to direct the manner of its application. The Supervisors are placed under their control and are subject to removal by them. Here is a concurrence of all the conditions necessary to constitute legal liability: a duty imposed by law, means and agents placed at their command to execute it, and capacity to sue and be sued, imposed by the Act of their creation. It is difficult to distinguish this case from that in 9 *Md. Rep.* "Charge and control over the public roads and bridges" conveys a power as broad as that "to prevent and remove nuisances," and necessarily imposes as high an obligation. The due exercise of the former involves the accomplishment of the latter. If the lesser power subjects the possessor to damages for neglect and omissions, the greater must produce a like responsibility.

The appellants rely on the decision in the case of *Bartlett vs. Crozier*, 17 *Johns.*, 439, pronounced in the Court of Errors of New York, by Chancellor Kent. This case was not referred to in the cases of the *Mayor & City Council vs. Marriott*, and *The Mayor vs. Pendleton & Harland*, and therefore requires more particular notice. That was a suit against an overseer of the roads individually, for damages arising from the want of repairs of a bridge, adverting to

which the Chancellor said: "If a private suit will lie in any case, for the recovery of damages occasioned by a broken bridge, I should suppose that the commissioners of highways are the persons to be sued." After assigning his reasons for this conclusion, he adds: "And although the question, whether the commissioners might not be liable to a private suit, is not now before us, I should be inclined to think, that the objection to such a suit applies to them as well as to overseers." "There is no certain, stable, absolute duty in the case. * * * There is not that precision and certainty of duty, that ought to make them responsible to individuals, to any extent and for any damage. The law has not supplied them with the coercive power requisite to meet and sustain such an enormous and dangerous responsibility."

Dwelling on the absence of any such action at common law against the county or its officers, he says: "The argument to be drawn from the English law on this subject, is very strong against the right of action. There are officers under the English law, equally as under ours, charged with repairing the roads and bridges. They have existed and been known from ancient times, and yet there is no case in the English books, nor any precedent under our colonial government of any such private action. This affords a very strong presumption that no such action will lie. In the case of *Russell vs. The Men of Devon*, 2 *T. Rep.*, an attempt was lately made in England to recover in a private suit, damages suffered in consequence of a bridge being out of repair, and the attempt was to charge two of the inhabitants of the county in behalf of all the rest. But it was held by the King's Bench that no civil action lay against the inhabitants of a county for an individual injury in consequence of a breach of their public duty. *The county was not a corporation for that purpose, and had no corporate fund.*" We have seen that in this State, by our Constitution and laws, the commissioners of the county are declared to be a corporation, are charged with the control

of the roads, and invested with power to levy taxes for
their repairs and improvement, and to pay all debts ex-
pressly or impliedly contracted. These distinguishing fea-
tures added to the peculiar provisions of the local laws of
New York, prescribing the powers and duties of commis-
sioners and overseers of highways, on which such cases
mainly turn, and the admission that the question was not
then before the Court, deprives *Bartlett and Crozier* of the
weight it would otherwise have as authority.

The liability of municipal corporation for *torts*, result-
ing from acts of omission or commission, is established by
various more recent decisions than that relied upon by the
appellants. The case of *Erie City vs. Schwingle*, 22 *Penn.
State Rep.*, 388, is closely analogous to the present. Judge
Black tersely states the question thus: "The principal
question in this case is, whether a city or county corpora-
tion, bound by its charter to keep its streets in repair,
is liable for an injury occasioned by neglect to do so?
"Every highway or thoroughfare which the public has a
right to use, must be kept, by somebody, in such order that
it can be safely used, and if serious injury happens to an
individual in consequence of its bad condition, those who
are bound to repair must answer in damages." After
citing various authorities to sustain the position assumed,
he addresses himself to the defence, that the funds for the
rebuilding the bridge had been exhausted. "This had
been laid and expended. But the charter says, that a lar-
ger tax may be laid with the consent of a majority of the
inhabitants, if it be required for a purpose of general
utility. * * * A tax beyond the half per cent., therefore,
for that purpose, might have been laid, unless a majority of
the citizens had refused to permit it. The people of the
city are the corporators. It is they who are sued under
the corporate name. It is they who must pay this judg-
ment, if paid at all. They are the defendants in this ac-
tion. It will not do for them to allege that they are un-
willing to perform a duty, and hold that up as an ex-

cuse for its non-performance? The Court of Common Pleas was right in saying the want of funds was no excuse."

Likewise in *Thayer vs. Boston*, 19 *Pick.*, 516, C. J. Shaw said: "It is a well settled rule of law, that if an individual suffer special damage by any unlawful act in obstructing a highway, he shall have his action, although the party doing the act is liable to an indictment." * * *

"The Court are of opinion, that the City of Boston may be liable in an action on the case, where acts are done by its authority, which would warrant a like action against an individual, provided such act is done by the authority and order of the city government," &c.

"That an action sounding in *tort*, will lie against a corporation, though formerly doubted, seems now too well settled to be questioned." *Yarborough vs. Bank of Eng.*, 16 *East.*, 6. *Smith vs. Birmingham & Gas Light Co.*, 1 *Adolph. & Ellis*, 526. And there seems no sufficient ground for a distinction in this respect between cities and towns. *Clark vs. Washington*, 12 *Wheat.*, 40. *Baker vs. Boston*, 12 *Pick.*, 184. *Stetson vs. Faxon*, 19 *Pick.*, 153.

In the last case, the opinion of Park, J., in the *Mayor & Burgesses of Lynn vs. Henley*, is cited with approbation, "it is clear and undoubted law, that whenever an indictment lies for non-repair, an action on the case will lie at the suit of the party sustaining any peculiar damage." Tested by this standard, if the case were one of first impression, there could be no doubt the action would lie.

The reasoning of the learned judge in *Bartlett vs. Crozier*, does not apply to such cases as the present, where the duty is imposed in general but most comprehensive terms, and the law has supplied the defendants with ample means, and armed them with coe cive power sufficient to meet and sustain their liabilities. The appellants being sued in their official corporate character, are in fact but the representatives and agents of the county, all the resources of

which are placed at their disposal to enable them to perform their legal obligations, express or implied.

*Judgment affirmed.*

(Decided Jan. 14th, 1864.)