# THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY *vs.* HATTIE E. WILSON.

*County Commissioners Not Liable for Injury Resulting From Defective Condition of Highway After Enactment of Statute Depriving Them of Control Over Roads.*

Under the provisions of Code, Art. 25, it has been held to be the general law in this State that both the power and the duty to keep the public roads in safe condition for travel were imposed upon the County Commissioners in each county and that they were therefore liable in damages to parties injured in consequence of the non-repair of such roads or the existence of dangerous obstructions upon them.  But the Act of 1900, ch. 685, enacted a special local law for Baltimore County, which almost entirely deprived the Commissioners of that county of control over the public roads therein and created a Board of Road Commissioners for each district who "shall take charge of all roads and bridges in their respective districts and shall see that no obstructions or injury is permitted upon any road or bridge under their supervision."  The Road Commissioners are not subject to the control of the County Commissioners in connection with the repair of roads, but are required to report to an independent official appointed by the Governor and known as the Road Engineer; and the formerly existing power of the County Commissioners to levy taxes to be expended upon roads is so restricted as to deprive them of their discretion in this respect.  After the enactment of this local law, the plaintiff was injured by an obstruction improperly placed upon a road of said county and brought this action against the County Commissioners to recover damages therefor. *Held*, that since the local law, which prevails over the general law because in conflict with it, had deprived the County Commissioners of the powers and duties which had constituted the ground upon which they had been held liable for such injuries, this liability no longer exists and the plaintiff is not entitled to recover.

Appeal from the Circuit Court for Harford County (WATTERS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*George L. Van Bibber* and *Frank I. Duncan*, for the appellant.

*John I. Yellott* and *Stevenson A. Williams*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal presents the question of the liability of the County Commissioners of Baltimore County in the present state of the law, for personal injuries caused to travellers by obstructions improperly permitted to remain upon the county roads.

There is evidence in the record tending to show the fol-lowing facts: Mrs. Hattie E. Wilson, the appellee, when trav-elling at night with due care on one of the county roads of Baltimore County was injured through being thrown from her carriage, which was overturned by running upon a rick of stone about three feet high placed upon the side of the road and extending into its bed. The stone had been put there by Frank Hurline, a neighboring farmer, with the permission or assent of Christopher Hall, one of the County Road Com-missioners, but without the knowledge of the appellant.

The appellee sued the appellant in tort for damages for her injury, and recovered a judgment in her favor, from which the present appeal was taken. The record contains two ex-ceptions, one of which is to a ruling of the lower Court upon admissibility of certain evidence, and the other is to its action on the prayers. The first exception was not insisted upon by the appellant and the real issue arises under the second one.

At the trial below the appellee, as plaintiff, offered two prayers, both of which were granted, and the defendant offered seven prayers, all of which were rejected. The proposition of the plaintiff's first prayer is that it was the duty of the County Commissioners to keep the road so free from obstructions that persons using reasonable care could travel on it in safety; and that if the rick of stone in question had, with the consent of the Road Commissioner Hall, been put and permitted to re-main for several weeks, in such position on the road as to make it unsafe for one using ordinary care to travel the road at night; and the plaintiff while so travelling upon the road was injured by her carriage coming in contact with the stones, she was en-titled to recover. Her second prayer is upon the measure of damages, in the event of a verdict in her favor, and is in the usual form and free from objection.

The defendant's first prayer asks the Court to take the case from the jury for want of legally sufficient evidence of negligence on the part of the defendant to entitle the plaintiff to recover.

It is conceded that if all of the provisions of the Public General Law regulating the powers and duties of County Commissioners throughout the State remain in force in Baltimore County the commissioners of that county are liable for personal injuries to travellers on the public roads resulting from a failure to keep those roads in proper repair. The question is whether the local road law, now in force in that county, enacted by the Act of 1900, chap. 685, is so inconsistent with the Public General Law in respect to the powers and duties of the County Commissioners that the local law has superseded the general one, and taken away from these commissioners that charge and control over county roads and the means and agencies with which to enforce the control which have always been held to constitute the foundation of their liability.

In order to reach a solution of the question thus presented for our consideration it becomes necessary to compare the provisions of the general and local laws pertinent to the issue that we may ascertain whether there is a material conflict between them.

Sections 1 and 2 of Article 25 of the Code of Public General Laws contain the following provisions :

Sec. 1. "The County Commissioners of each county in this State are declared to be a corporation and shall have full power to appoint  *  *  *  *  *road supervisors*  *  *  * and all other officers, agents and servants required for county purposes not otherwise provided for by law or by the Constitution, and they shall have charge of and control over the property owned by the county, and over county roads and bridges, and whenever in their opinion the public interests require or will be thereby advanced they may commit the whole matter of grading and constructing public roads, and the repairs thereof, and the construction and repairs of public bridges, to the charge of competent and scientifically educated

civil engineers, who shall direct and manage all such public works under the immediate control of said County Commissioners, and who shall hold office for such time, with such salary, under such bond, and subject to such regulations as may be directed by the said County Commissioners from time to time." * * *

Sec. 2. "That they shall also in their respective counties have control over all public roads, streets and alleys, except in incorporated towns, and make such rules and regulations for repairing, cleaning, mending and perfecting the same, and providing for the costs of the same, as they may deem necessary." * * *

It has been repeatedly held by this Court that these sections of the general law not only conferred the power, but also imposed the duty upon the County Commissioners to keep the public roads in a safe condition ; and that, as the law provided them with proper agents for the discharge of these duties and the power to levy the requisite taxes for the repair of the roads, it made them liable for injuries resulting from the non-repair of such roads or the existence of dangerous obstructions upon them. *Duckett's case*, 20 Md. 468; *Gibson's case*, 36 Md. 229; *Baker's case*, 44 Md. 9; *Eyler's case*, 49 Md. 269; *Duvall's case*, 54 Md. 354. It was admitted in these cases that there was no such liability at common law or by the express terms of the statute, but it was held to have arisen by necessary implication from the powers and duties of the commissioners under the several provisions of the general law.

The local road law in force in Baltimore County when the appellee was injured, was enacted, as we have already said, by chap. 685 of the Acts of 1900. Its salient features are as follows :

Sec. 188 directs the County Commissioners to appoint a Board of Road Commissioners for each district, from the voters resident of therein who have in the previous year paid taxes on property assessed at at least $500, and requires the appointees to give bond for the faithful discharge of their duties.

Sections 188 and 190 require the road commissioners to promptly organize as a board and, with the advice of the roads engineer, adopt the system for the repairs and improvement of the roads in their respective districts.

Sec. 191 requires the road commissioners to keep books, showing in detail the cost of the labor and material used in the repair or improvement of each road in their respective districts. These books are to be open to the inspection of the roads engineer, to whom the roads commissioners are required to make annual reports of the condition of the roads, and the nature and extent of the work done on them during the year.

Sec. 192 requires the road commissioners of each district to make monthly itemized statements of the labor and material used by them to the road engineer, who must approve all bills for labor and materials if correct, and deliver them to the County Commissioners who, after the bills have been properly audited, are required to direct their payment to an amount not exceeding the special road tax collected from the district for that year.

Sec. 194 authorizes the County Commissioners, upon charges made, and after such notice and a hearing, to remove any road commissioner for neglect or refusal to perform his official duty, and also to fill vacancies caused by resignation or removal of road commissioners.

Sec. 195 provides, among other things, that the road commissioners "*shall take charge of all roads and bridges in their respective districts, and shall see that no obstructions, hindrances or injury is permitted upon any road or bridge under their supervision*, and if any road or bridge under their supervision shall form the boundary between districts, the County Commissioners shall assign to each district its portion of said road or bridge."

Sec. 196 provides that "the Governor shall appoint a Baltimore County Roads Engineer, who shall hold office until removed by the Governor, or his successor, for such good cause as he shall deem sufficient."

Sec. 197 prescribes the duties of the roads engineer. These

are mainly advisory in their nature, and to be rendered to the
road commissioners to aid them in the management and re-
pair of the roads, but he is required to pass upon the propriety
of the expenditures of the road commissioners, and to make
an annual report to the County Commissioners, and to the
Maryland Geological Survey of the condition of the roads and
the nature and cost of the improvements made on them during
the year.

Sec. 199 directs the County Commissioners to levy annually
on the assessable property in the county not less than 15 nor
more than 25 cents on the $100, for the use of the roads and
bridges, of which only 5 per cent shall be applied to the gen-
eral use of the county roads and bridges; and the balance shall
be set apart as a special road and bridge fund for the use only
of that district from which it has been collected.

It is apparent from this synopsis of the Act of 1900, that it
not only introduces into the management of the public roads
of Baltimore County, many details of administration not found
in the general law, but it deprives the County Commissioners
of almost the entire charge and control of the roads and im-
poses that duty upon a new set of officials, for whose appoint-
ment it makes provision. It creates a Board of Road Commis-
sioners for each district, and requires them to "take charge of
all the roads and bridges in their respective districts" and
keep them free from hindrances and obstructions, to adopt a
system for repairing and improving them, and to cause the re-
pairs and improvements to be made and to purchase the ma-
terials requisite for that purpose.

The Road Commissioners receive a fixed salary and are not
made subject to the control of the County Commissioners in
connection with the repair or improvement of the roads or
the purchase of materials.   On the contrary, the Act directs
them to report the condition of the roads and improvements
made thereon to the Roads Engineer, an independent official
appointed by the Governor, and to make monthly statements
of their expenditure for labor and material to the same official,
to be by him approved, if correct, and handed to the County

Commissioners, who are then required to order their payment after they have been properly audited.   The Roads Engineer, and not the County Commissioners, is made the adviser of the Roads Commissioners in the exercise of the charge conferred upon them by the Act over all the county roads and bridges.

The Road Commissioners are, it is true, appointed by the County Commissioners from a certain class of taxpayers, and they may be removed for neglect of duty by the County Commissioners after charges made and hearing thereon, but they do not act under the direction or supervision of the County Commissioners in keeping the roads in safe condition, as the charge and management of the roads is conferred by the local law upon the Road Commissioners themselves.   Not only are the persons directly charged with the care of the roads thus made practically independent of the County Commissioners; but the power of the latter to levy taxes for the use of the roads is now so limited and restricted as in effect to deprive them of their former discretion as to the application of the funds raised by those taxes.

As by this local law, which prevails over the general law wherever the two conflict, the County Commissioners of Baltimore County have been shorn of the very powers and duties which constituted the only ground of their liability for damages for injuries caused by the condition of the public roads, it follows, as a matter of course, that their liability for such damages no longer exists.   If it be objected that the conclusion which we have reached as to the effect of this local road law deprives the users of roads in Baltimore County of that redress for injuries resulting from defects therein which is afforded to those using roads in other portions of the State, we are compelled to reply that the remedy for that situation must be sought at the hands of the Legislature and not of the Courts.

The learned Judge below should have rejected the plaintiff's prayers and granted the defendant's first prayer, and for his error in not doing so the judgment must be reversed.   As it is apparent that there is no liability on the part of the appel-

lants for the injuries sustained by the appellee, no new trial of the case will be awarded, and for that reason we find it ûnnecessary to review the remaining prayers of the defendant below.

*Judgment reversed with costs, without a new trial.*

(Decided January 22nd, 1903.)

Jones, J., dissented and delivered the following opinion in which Briscoe, J., concurred.

I have not been able to concur in the conclusions reached by the Court in this case. The case was instituted in the Court below by the appellee against the County Commissioners of Baltimore County, as a corporation, to recover damages for injuries sustained by her as the result of an accident occurring upon one of the public roads of that county which she was, at the time, using. The *narr.* alleged that the accident was due to the negligence of the defendant corporation in permitting the road "to be and remain in an unsafe and dangerous condition for a long space of time." At the trial there was evidence to show that the accident complained of was caused by obstructions, consisting of a pile of stones, which had been placed and allowed to remain for a considerable time upon the road at the place of the accident. There was also evidence going to show that these stones were placed and allowed to remain upon the road in question with the knowledge and assent of one of the Road Commissioners of Baltimore County to whom, under the local law of the county, was assigned the duty to take and exercise "special supervision" over the said road. That.is to say the evidence tended to show that the accident causing the injury, which was the subject of suit, was directly attributable to the negligence of an official or servant of the county upon whom was imposed the duty of providing for the safety of the travelling public in their use of its roads.

The view that controlled the decision of this Court, and as to which the diversity of opinion here arose, was that which

was urged in the contention upon the part of the defendant corporation, the appellant here, that by the Act of 1900, chap. 685, a Public Local Law of Baltimore County, the control of the County Commissioners over, and their powers and duties in respect to, the supervision and care of the public roads of that county are so far abridged that they are not liable to actions for injuries resulting from the unsafe condition of the roads. The force of this contention is not perceived. The County Commissioners as respects any duty they are charged with as to supervision and control over county roads are but agents of the corporation they represent. The corporation is the county and the inhabitants thereof are the corporators, and not those who may for the time be exercising the function of County Commissioners. During their incumbency in office the County Commissioners wear the corporate name and can sue and be sued. They bring suits for the county and respond to suits against the county. The suits they bring enure in all beneficial results to the people of the county. When suits result in establishing a liability against the corporation this is enforced, not against the County Commissioners, but through them against all the people of the county. The capacity in which these officials sue or are sued is altogether representative ; and so it is with them in all the functions they exercise. In all of these they are but agents. They are not the corporation. They represent the corporation. The County Commissioners are a body of officials subject to frequent change. The corporation they represent, with powers and duties as a municipal organization, always remains.

As to what constitutes the corporation against which the liability in this case, or in a case of this nature, is sought to be enforced, or as to the merely representative character o the County Commissioners, no authority would seem to be needed; but authority is not wanting in the decisions of this Court. The earliest case in this State that adjudged the liability of a county, as a municipal corporation, for injuries resulting to individuals of the community from a defective condition of the public roads due to the negligence of the officials

or agents of the county is that of *Co. Commrs. of A. A. Co.
v. Duckett*, 20 Md. 468. In that case it was said: "The appel-
lants (the County Commissioners) being sued in their official
corporate character, are in fact but the representatives and
agents of the county, all the resources of which are placed at
their disposal to enable them to perform their legal obliga-
tions express or implied" (p. 481-2). The Court there also
refers to with approval, and adopts as applicable to a county
as a municipal organization, the language in the case of *Erie
City v. Schwingle*, 22 Penn. St. 388, in which it is said: "The
people of the city are the corporators. It is they who are
sued under the corporate name. It is they who must pay
this judgment, if paid at all. It will not do for them to al-
lege that they are unwilling to perform a duty, and hold that
up as an excuse for its non-performance." In the case of *Co.
Commrs. of Talbot Co. v. Co. Commrs. of Queen Anne's Co.*,
50 Md. 245, JUDGE ALVEY, speaking for the Court said (p.
259) "A county is one of the public territorial divisions of the
State, created and organized for public political purposes, con-
nected with the administration of the State government, and
especially charged with the superintendence and administra-
tion of the local affairs of the community; and *being in its
nature and object a municipal organization*, the Legislature may,
unless restrained by the Constitution, or some one or more
of those fundamental maxims of right and justice with respect
to which all governments and society are supposed to be or-
ganized exercise control over the county agencies, and require
such public duties and functions to be performed by them, as
fall within the general scope and objects of the *municipal or-
ganization.*" In the same case it is also said "within the
county limits the making and maintaining the public high-
ways and bridges, at the cost of the county, are among the
most ordinary functions with which the county organization, *as
a municipality*, is charged." * * It is evident that in the
contemplation of the Constitution the county is the munici-
pality. Section 54 of Article 3 of the Constitution, provides
that "no *county* of this State shall contract any debt, or obli-

gation in the construction of any railroad, canal, &c. * * * *
or loan *its* credit to, or in aid of any association, corpora-
tion," &c.

If it be the county as a municipality that is the corporation
defendant in this suit and not the County Commissioners, ex-
cept as they represent the county, it seems to me that the in-
evitable logical sequence under the decisions of this Court in
this class of cases, is that the appellant corporation is liable
in the action brought by the appellee provided the facts al-
leged in the pleadings are established by the necessary proof.
In the case of *Mayor and C. C. of Balto.* v. *Marriott,* 9 Md.
160, a provision in the charter of the city of Baltimore, Act
1796, ch. 68, sec. 9, conferred upon the municipality full
power and authority to enact laws necessary "to prevent and
remove nuisances" and it was held that this imposed upon the
municipality a duty and obligation to use means at its com-
mand to make this power effective a neglect to do which ren-
dered the corporation liable to damages resulting to individ-
uals from such neglect. It was also held that the obligation
and duty from which the liability of the corporation arose
were devolved upon the corporation by statutory provisions
which were there adverted to, not that the corporation was liable
at common law. In the case of *Co. Commrs. of A. A. Co.* v.
*Duckett, supra,* this Court after referring to the case in 9 Md.
160, against the city of Baltimore and stating the ground upon
which the liability of the municipality was there fixed; and
then referring to the Act of Assembly which constituted the
County Commissioners a corporation and gave the corporation
"charge and control over the public roads" with power "to
levy all needful taxes" and "to pay and discharge all claims
on or against the county;" and stating that the supervisors of
roads were placed under the control of the County Commis-
sioners and were subject to removal by them, said : "Here is
a concurrence of all the conditions necessary to constitute legal
liability ; a duty imposed by law, means and agents placed at
their command to execute it and a capacity to sue and be
sued, imposed by the act of their creation. It is difficult to

distinguish this case from that in 9th Md. Rep.    'Charge and control over the public roads and bridges,' conveys a power as broad as that 'to prevent and remove nuisances' and necessarily imposes as high an obligation.    The due exercise of the former involves the accomplishment of the latter.  If the lesser power subjects the possessor to damages for neglect and omissions, the greater must produce a like responsibility."  Thus the Court put the liability of the county, as municipal corporation, for such neglect of duty as is charged in this case upon the same footing as that of other municipal corporations or municipal corporations proper.    This last named case has been followed in a number of cases in this Court, several of which are referred to in the opinion of the Court in this case, and the doctrine there enunciated has become the settled law of this State.

It may be said, before examining the legislation supposed to affect this doctrine as applicable to the present case, that it is not to be presumed that the Legislature has designed to reverse and annul the law as it has been settled and applied by the Courts for nearly half a century ; and before imputing such an effect to any Act of legislation there should be found either an explicit declaration of such an intention, or it should appear by a very clear implication.    As has been seen such liability as is here sought to be enforced against a county as a municipal organization arises from a duty and obligation imposed by the statute law.    Now as affecting the liability of the appellant to be sued in the present case how stands the statute law ?    Article 25, section 1 of the Code, declares the County Commissioners of each county a corporation and that "they shall have charge of and control over the property owned by the county and over county roads and bridges ; " and section 2 of the same article provides that they shall have in their respective counties "control over all public roads, streets and alleys except in incorporated towns, and make such rules and regulations for repairing, cleaning, mending and perfecting the same, and providing for the costs of the same as they may deem necessary."    Here along with the incorporation of the

County Commissioners, which is simply making a municipality of the county under the name designated in the law, a duty is expressly and in terms imposed upon the corporation of having charge of and a care for the public roads ; and in section I there is a further provision for supplying the agencies through which this duty may be discharged.

It is admitted that under the provision of the Code just referred to, the corporation there created or recognized would be liable for injuries to persons using the public roads caused by non-repair, or defective or unsafe condition, of the roads due to the negligence of the servants or agents of the corporation. Now how is this liability affected, as respects the county here involved, by the local legislation referred to ? The Act of 1900, chap. 685, is one of a series of Acts beginning with the Act of 1868, chap. 411, relating to the making, perfecting and repairing of roads and bridges in Baltimore County. In none of these Acts, including that of 1900, will it be found expressed in terms that it is designed to relieve the county corporation from the obligation and duty in respect to the roads of the county which was imposed upon it, admittedly, by the provisions of the Code just referred to. There is in none of these Acts any repeal of the said provisions and it is not indicated in any direct way that they shall no longer have force in Baltimore County. The nullifying of these provisions therefore, if that is to be held to be a result of subsequent legislation, must be found in the inconsistency between the provisions of the Code in question and this subsequent legislation. There can be no doubt that as far as such inconsistency exists the subsequent legislation works a repeal or modification of the former. The Code in Article 25, as we have seen, provided for the incorporation of the County Commissioners ; then imposed upon them, as a corporation, an obligation and duty to provide for the safety of the travelling public in the use of the public roads, not in express terms to be sure, but as a necessary consequence from the powers conferred upon them in respect to the public roads according to the effect given to such powers by our Courts; and further

provided for agencies through which the obligation and duty so imposed were to be performed.    Now to what extent is the subsequent legislation with which we are here concerned inconsistent with these provisions of the Code ?    It can scarcely admit of question that the sole object and purpose in the mind of the Legislature in enacting the Act of 1900, chap. 685, and the legislation of which that was amendatory was to provide more efficient means and agencies for the working ; the improvement and the repair of the public roads of the county affected by such legislation.    The duty of putting these agencies into effective operation rested somewhere and it would seem to have been plainly left with the corporation concerned. The Act in question will be searched in vain to find it placed elsewhere ; and the object of the Act is not only not inconsistent with the duty remaining with the county corporation, but it would be most illogical that the providing more efficient means and agencies for the performance of a duty should be held to relieve altogether from any responsibility for its proper discharge.

The Act of 1900, chap. 685, in its object, is therefore in no wise inconsistent with the previous provisions of law that put upon the county the duty and obligation for keeping its roads in safe condition for travel.    It made a change as to the agencies through which that duty was to be performed and to that extent modified the pre-existing law but otherwise did not interfere with its scope or its effect.    This appears from an examination of the provisions of the Act in question.    There are a number of provisions going to show a recognition of the general control and jurisdiction of the County Commissioners over the county roads, and of their control over agents provided by the Act and charged with the more active duties in respect to them.    To set out all of these would be tedious and would unduly protract this opinion but reference may be given to sections 201, 202, 203, 204, 205 to 215 inclusive, 217B, 217C, 217D.    Other sections will need more particular mention.    Section 188 provides that the County Commissioners of Baltimore County shall for each election district in the

county appoint road commissioners—"discreet and trustworthy taxpayers"—to compose a Board of Road Commissioners. Section 189, that the road commissioners so appointed shall organize their respective boards and divide their respective districts into sub-districts and "assign to each commissioner the sub-district over which he shall have special supervision." Section 190, that the road commissioners shall "adopt such system for the repairs and improvement of roads in their respective districts as said board may deem best" after having called for and received advice from the Baltimore County Roads Engineer provided for in the Act.   Section 191, that the road commissioners shall keep books showing expenditure, &c., to be open to inspection of County Commissioners, the road engineer, and any taxpayer of the county ; and before making any repairs or improvements on a road costing over one hundred dollars shall ask for and receive from the roads engineer plans, &c.  Section 192, that the road commissioners in each district shall furnish, as prescribed in said section, a statement of expenditure for the month just passed to the roads engineer who shall deliver all bills he approves to County Commissioners, &c.

Section 194 that "all Road Commissioners shall be subject to removal by the County Commissioners for neglect or refusal to comply with the duties of their office;  provided they shall be notified of the charge against them in writing" and have opportunity given at a stated time to answer—and if any commissioner shall resign or be removed his place shall be filled by the County Commissioners within thirty days after any vacancy shall occur.   Section 195 that the "Road Commissioners  *  *  shall take charge of all roads and bridges in their respective districts, and shall see that no obstructions, hindrances or injury is permitted upon any road or bridge under their supervision."   Section 196 provides for the appointment by the Governor of a Roads Engineer and section 197 prescribes his duties which are chiefly of an advisory character and the service he is to render is mostly on the call of the Road Commissioners as far as it is to be rendered di-

rectly to the county.  Section 199 directs that the County Commissioners shall annually levy "not less than fifteen nor more than twenty-five cents on the one hundred dollars for the use of the county roads and bridges  *  *  *  of which five cents on the hundred dollars shall be set apart as a general road and bridge fund and be applied to the general use and the benefit of the roads and bridges" of the county "and to no other purpose" and the remainder of the tax "shall be set apart as a special road and bridge fund  *  *  for the use and benefit of that district from which it has been collected and for no other purpose."  Section 200 authorizes the County Commissioners to borrow not exceeding twenty thousand dollars "when there shall not be sufficient money in the treasury as a general road and bridge fund to meet the requirements of the county at large."  Here would seem to be all the elements of legal liability under the pleadings in this case on the part of the county corporation for a neglect of duty to the public in respect to keeping the roads of the county in a safe condition.  It is expressly enjoined upon the Road Commissioners, that the Act provides for, to see "that no obstructions, hinderances or injury is permitted upon any road."

These Road Commissioners are the agents and servants of the county.  They are appointed by the corporate authorities for the duties prescribed in the Statute and for neglect of these duties are subject to removal by the same authorities. Authority is given the corporation to supply the means of performing these duties by taxation and by borrowing money in addition if necessary.  The corporation is thus fully equipped for the work of keeping the roads in repair and safe for travel.  For this, means and agents appointed by the corporation and amenable to it for neglect of duty are both supplied.  In *Duckett's case*, 20 Md. *supra*, in which the county was held liable, the roads of the county were in charge of supervisors whose duty it was "to superintend and direct the repairs of the public county roads" under regulations to be prescribed by the County Commissioners.  These

supervisors were elected by the people, (Const. 1851, sec. 9, Act 1853, ch. 300), and were given the "power to employ any person as deputy supervisor or as agent" that they might "deem necessary" Act 1853, ch. 300, sec. 2. By section 5 of the same Act each supervisor was to report annually to the County Commissioners "the general condition of the roads and bridges." The County Commissioners had power to revoke the commissions of the supervisors for neglect of duty or malfeasance and to fill the vacancy thus created.

In the case at bar the county roads are in charge of Road Commissioners appointed by the corporate authorities to take supervision of the roads under regulations prescribed in the law and for neglect of the duty prescribed can be removed by the same authority. It seems to be supposed that because in *Duckett's case* the duties to be performed by the servants of the county, the supervisors, were to be according to regulations to *be* prescribed by the corporate authorities; and in the case at bar the like duties are to be performed by Road Commissioners according to general regulations prescribed in the Statute, there is in the two cases a difference of power and duty and therefore a difference of liability. Now the duty of the agent and servants of the county in each case was the same. The supervisors in the one case and the Road Commissioners in the other were to keep the roads in repair and safe. The regulations under which they operated were the means to an end. The power and control of the corporate authorities over the agencies in either case were not confined to prescribing regulations for the details of work to be done by the servants of the corporation in the performance of their duty but they were to see that duties prescribed were properly performed to accomplish the main end. It could make no difference therefore whether regulations, under which the servants of the county in charge of the roads were to operate, were to be prescribed by the county authorities or whether these authorities were only to see that regulations already prescribed were observed and made effective. As the law stood in *Duckett's case* the control the county corporation

was given over this, was the power of removal of the supervisors for neglect of duty. Under the law applicable to this case these authorities have control of it in the first instance in the selection of proper persons for the discharge of duties pertaining to the office of Road Commissioner; and in the next place in the power to remove these officials for a neglect of duty and without delay to appoint others. It seems hardly possible to distinguish this case in principle from *Duckett's case.*

. In the case of *Altvater v. M. & C. C. of Balto.,* 31 Md. 462, where the action for injuries · there complained of brought against the appellee corporation failed, the decision was rested upon the "distinct ground that by legislation subsequent to the decision in *Marriott's case,* the police of the city had been organized ·as a distinct body of State officials deriving their existence from and strictly within the jurisdiction of State authority and not amenable to the city authorities for the faithful discharge of their duties. It was held that the action would not lie solely because the whole police force had been placed in other hands and under other control, so that the city was * * * deprived of the means of enforcing its ordinance for the removal of the nuisance" causing the injury complained of. The duty "to prevent and remove nuisances" in the city had been imposed upon other officials (the Police Commissioners) (Act 1867, ch. 367), and the duties and obligations of Mayor and City Council of Baltimore had been qualified and limited because the duty had been confided to an agency over which the corporation had no control and which was not amenable to it. The case has received an interpretation by this Court and cannot be misunderstood. *Eyler v. Co. Commrs. of Al. Co.,* 49 Md. 272.

It affords no color for the contention made here for the non-liability of the appellant supplied as it is, as has been seen, with the means and with the agencies amenable to its authority to meet the duty the neglect of which by officials in its service has given rise to the suit here brought. The most casual reference to the case of *Duvall v. Co. Commrs. of A. A.*

*Co.*, 54 Md. 350, will show that that case can have no bear-
ing upon such a question as we have here.    The action in this
case was brought for an injury resulting from the condition of
a public road alleged to be due to the negligence of the appel-
lant and the question is simply whether the appellant is so far
chargeable with the duty to keep the said road in repair as to
make it liable in damages for the injury.    In *Duvall's case*
(page 356), it is said : "The injury here complained of is not
the direct result of a failure to keep the road in proper repair
but is occasioned by a collateral act done by those engaged in
repairing it."    This is quite sufficient to show the broad dis-
tinction between that case and this.

An inquiry is suggested by the situation which relieves the
appellant of all liability from non-repair of the public roads of
the county under the provisions of the Act of 1900, ch. 685.
It will appear from an examination of the provisions of the
Act that at least some duty is imposed upon the County Com-
missioners in respect to keeping in proper condition and repair
the roads of the county.    They are to appoint the road com-
missioners, to levy necessary taxes to be expended on the
roads and are empowered to remove the road commissioners
for neglect of duty.    Just how much more power must the
Legislature have left to the County Commissioners to make
them liable for injuries resulting from the roads being in de-
fective or improper condition if they did not design to change
and annul the settled law as to such liability under the law as
it previously existed ?    By what criterion can legislation be
shaped to preserve this liability in the frequent changes that
are being made in the local law of the counties simply to pro-
vide more efficient and more judicious methods and agen-
cies for improving, perfecting and repairing the public roads ?
Must the Legislature leave each law to be tested in the Courts
before it can be determined whether enough power has been
conferred, and a sufficient duty imposed, upon the County
Commissioners to preserve the liability of the county munici-
pality for injuries resulting to the travelling public from the
non-repair and defective condition of the roads because of

neglect of the use of means supplied for keeping the roads in a safe condition ?

A further remarkable feature of the situation is this. As this Act of 1900, ch. 685, is held to relieve the corporation entirely of liability for injuries resulting from non-repair of, and defects in, the roads of the county, suppose the County Commissioners should refuse or neglect to appoint road commissioners or should appoint known inefficient and incompetent persons, or should refuse or neglect to levy the necessary taxes to keep the roads in repair or to remove a road commissioner known to be incompetent or neglectful of duty, persons suffering injuries directly traceable to such omissions or neglect of duty on the part of the County Commissioners would be without redress and could not enforce a liability against them. It is hardly conceivable that the Legislature intended this. It would seem a much more reasonable construction of the legislation in question to hold that the corporation represented by the County Commissioners could only excuse itself from a liability such as is sought to be enforced here, by, at the least, being able to show that it had gone to the extent of the powers conferred upon it, in providing against conditions from which the injuries resulted.

Two cases may be appropriately referred to as being in their facts and reasoning very much in point in considering the case at bar as affected by the Act of 1900, ch. 685. The first is that of *Ehrgott* v. *Mayor, &c., of City of N. Y.*, 96 N. Y. 264, in which an action was brought to recover damages for personal injuries suffered by the plaintiff in consequence of a defect in a street in the city of New York. The accident happened in a district annexed to the city by an Act of Assembly in which it was enacted that certain territory mentioned be set off from the county of Westchester and annexed to and merged in and made a part of the city and county of New York and to have the same status as to rights, franchises, obligations and liabilities, &c., " as if such territory had been included in the city and county" at the time of the adoption of the first charter. Another section of the Act provided that the Mayor

and Common Council of the city of New York and other city officers should exercise the same powers and perform the same duties in the annexed territory as if said territory had always been a part of the city "except as the same may be specially limited and excepted or extended by this Act." Still another section of the law provided that the Commissioners of the department of public parks of the city of New York shall have the exclusive power to locate and lay out, construct and maintain all public parks, streets, road and avenues * * and shall have exclusive control of the maintenance and construction of all public parks * * and to construct and maintain all bridges, tunnels, sewers, streets, roads, &c." It was argued in the defense to the action that the operation of the last section was such as to exempt the city from any responsibility for the streets in the annexed territory. This view prevailed in the General Term which reversed the judgment obtained by the plaintiff in the Court of original jurisdiction. The decision of the General Term was reversed by the Court of Appeals which said : "The exclusive control here given to the Park Commissioners is not exclusive of the city, but exclusive of any other officers of the city. It is the duty of the city to keep its streets in repair and that duty, as to all streets in the annexed territory is devolved upon the Park Commissioners. It is a duty which they discharge not for themselves, not for the public generally but for the city. It is still bound to discharge the duty and the Park Commissioners are the agency through which it discharges it."

The next case is that of *Barnes* v. *Dist. of Columbia*, 91 U. S. 540, which was an action for damages for personal injury caused by the defective condition of a street in the city of Washington. The District of Columbia was organized as a municipal corporation by Act of Congress 1871, the executive head of which, the Governor, was appointed by the President with the consent of the Senate. There was a legislative assembly consisting of two bodies and among other agencies of the corporation given it to carry out its purposes was a Board of Public Works to consist of the Governor and four other persons,

to be appointed by the President with the consent of the Senate, who were to have entire control of and make all regulations which they should deem necessary for keeping in repair the streets, avenues, alleys and sewers of the city, &c. The members of the board were to hold office for four years unless sooner removed by the President. It was contended in the case last referred to in defense of the action that the Board of Public Works was an independent body not forming part of the corporation and that the corporation was not responsible for its acts. The Court in disposing of the case after referring to this contention said: "We think Congress intended to make the Board of Public Works a portion of the municipal corporation. The Governor or Mayor as he would ordinarily be called represented the executive department. The Legislative Assembly like a Common Council had the exclusive authority to pass all laws  *  *  and to the Board of Public Works, like an ordinary agent of the corporation was given the exclusive control of the streets, and alleys  *  *  we take the body thus organized to be a municipal corporation and that its parts are composed of the members referred to : and we hold therefore that the proceedings by that body in the repair and improvement of the street out of which the accident in question arose are the proceedings of the municipal corporation. That in such case the corporation is responsible we have already cited authorities to show." The Court further said: "A municipal corporation may act through its Mayor, through its Common Council or its legislative department by whatever name it may be called, its superintendent of streets, commissioner of highways or Board of Public Works, provided the act is within the province committed to its charge nor can it be of the slightest consequence by what means these several officers are placed in position—whether they are elected by the people of the municipality or appointed by the President or Governor. The people are the recognized source of all authority State and municipal and to this authority it must come at last, whether immediately or by circuitous process."

For the reasons appearing in the foregoing expression of views I cannot assent to the proposition maintained by the majority of the Court that the Act of 1900, ch. 685, operates to relieve the appellant of all liability to be sued for torts of the character of the one here the subject of the suit.

I am authorized by JUDGE BRISCOE to say that he concurs in this opinion.

(Filed December 9th, 1903.)