## THE COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY vs. ELIZA S. CARR.

*Liability of County Commissioners for Defect in Public Bridge —Requisites of Declaration in Action Against County Commissioners for Non-Repair of Roads— Instructions to the Jury—Evidence.*

The Act of 1908, Chap. 654, provides that the County Commissioners of Anne Arundel County shall appoint a road engineer who shall have control and supervision of the repairing and reconstruction of the public roads and bridges of the county, but he is forbidden to purchase any material without the approval of the Commissioners, and he is required to report to them monthly the work done or contemplated. *Held.* that the effect of this Act is not to relieve the County Com-

missioners from their statutory liability for injuries caused by defects in the public roads and bridges which they negligently suffer to become unsafe for travel.

In an action against County Commissioners, a declaration which alleges that the defendants were negligent in allowing a bridge on one of the public roads to be out of repair and unsafe for use and that by reason of such negligence, the plaintiff's horse, while passing over it, broke through the bridge and the plaintiff was thrown out, is bad on demurrer because too general. It does not set forth in what respect the bridge was unsafe, and the defendant was entitled to have notice of the particular negligence for which the action was brought.

In an action of tort, the declaration should describe the wrong for which redress is sought with such a reasonable degree of certainty as will give fair notice to the defendant of the character of the claim made against him.

The County Commissioners are required by law to keep the public roads and bridges in their county in good repair and safe for travel, but are only liable for injuries resulting from the non-repair of a road or bridge when that condition was due to their negligence in failing to make repairs.

Consequently, a prayer instructing the jury that if the plaintiff while driving across a public bridge was injured in consequence of its being out of repair, he is entitled to recover, is erroneous.

The fact that a particular bridge was a part of one of the public roads of a county is sufficiently proved when one of the road commissioners of the county testifies that he had charge of the roads and bridges in his district, including the one in question, and examined the same once a month.

When the defect in a bridge which caused an injury to the plaintiff, driving over it, was latent, and there is no evidence that plaintiff had reason to suppose that the bridge was unsafe, or could have discovered the defect by the exercise of ordinary care, or did not use ordinary care, a prayer which submits to the jury the question of plaintiff's contributory negligence is properly rejected.

It is also not proper in such case to instruct the jury that the plaintiff cannot recover if they find that he could have avoid-

ed the accident by the exercise of due care, when the prayer
does not also require them to find that he did not use due care.

The fact that a party who was injured by a defect in a bridge
was well acquainted with it because he had frequently driven
over it, does not justify the inference that he knew the bridge
was dangerous or did not use due care in crossing it.

When the plaintiff makes out a *prima facie* case of negligence
on the part of the defendant and injury resulting from such
negligence, without any negligence on his part directly con-
tributing thereto, the burden is on the defendant to show con-
tributory negligence on the part of the plaintiff, and in the
absence of any evidence tending to show such negligence it
would be error to instruct the jury that if they find that the
plaintiff was guilty of contributory negligence, he cannot re-
cover.

*Decided June 30th 1909.*

Appeal from the Circuit Court for Anne Arundel County
(BRASHEARS, J.), where there was a judgment on verdict for
the plaintiff for $200.

*Plaintiff's 2nd Prayer.*—If the jury find from the evidence
in the case that the road described in the declaration was a
public road of Anne Arundel County and that the bridge
mentioned in said declaration was a part of said County
Road; and if the jury further find, that the plaintiff
whilst driving on and over the said bridge on or about the
10th of June, 1908, and using due care and caution was in-
jured by reason of the defective condition of said bridge, re-
sulting from the negligence of the defendant in not keeping
the same in repair, then the defendant is liable to the plain-
tiff in this action and their verdict must be for the plaintiff.
(*Granted.*)

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*James W. Owens,* for the appellant.

*A. T. Brady,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellee brought suit against the County Commissioners of Anne Arundel County to recover for injuries claimed to have been sustained by her while driving over a bridge on one of the public roads of said county, by reason of the negligence of the defendant in failing to keep the bridge in proper repair. The Court below overruled the demurrer to the amended declaration, and the trial of the case resulted in a verdict and judgment in favor of the plaintiff for $200 from which judgment the defendant appealed.

The declaration, which contains two counts, states, in the first count, that one of the public roads of Anne Arundel County, "to wit: A road leading from the Reservoir to Lusby's School House, near Chesterfield, in the Second District of said county, was negligently and carelessly suffered by said defendants to be out of repair and unsafe for travel, and by reason of negligence of said County Commissioners the plaintiff on or about the 10th day of June, in the year nineteen hundred and eight, while traveling over said road, and that while the plaintiff was exercising due, proper care and caution, was greatly injured by reason of the horse she was driving breaking through a bridge on said road and she being thrown from the vehicle in which she was driving, from which injury the said plaintiff suffered great bodily pain." And, in the second count, "That one of the bridges on the road leading from the Reservoir to Lusby's School House, near Chesterfield, in the Second District of Anne Arundel County, which said bridge was then and there a part of said public road, was negligently and carelessly suffered by said defendants to be out of repair and in an unsafe condition for travel and by reason of the negligence and carelessness of said County Commissioners, allowing said bridge to be out of repair and in an unsafe condition for travel, the

said plaintiff on or about the 10th day of June, in the year 1908, whilst traveling over said road and bridge and whilst using and exercising due care and caution was thrown from the vehicle in which she was riding and was greatly injured, by reason of the horse breaking through said bridge, from which injury the said plaintiff suffered and continues to suffer great bodily pain," etc.

The ground on which the defendant demurred to this declaration is that under the Act of 1908, Chapter 654, a local law for Anne Arundel County, the defendant is not liable for injuries caused by the condition of the public roads of the county, and counsel for the appellant relies entirely upon the decision of this Court in the case of *Baltimore County* v. *Wilson,* 97 Md. 207. In that case the Court was dealing with the Act of 1900, Chapter 685, and after setting out the several provisions of the Act said: "It is apparent from this synopsis of the Act of 1900, that it not only introduces into the management of the public roads of Baltimore County, many details of administration not found in the general law, but it deprives the County Commissioners of almost the entire charge and control of the roads and imposes that duty upon a new set of officials, for whose appointment it makes provision. It creates a Board of Road Commissioners for each district, and requires them to 'take charge of all the roads and bridges in their respective districts' and keep them free from hindrances and obstructions, to adopt a system for repairing and improving them, and to cause the repairs and improvements to be made and to purchase the materials requisite for that purpose. The Road Commissioners receive a fixed salary and are not made subject to the control of the County Commissioners in connection with the repair or improvement of the roads or the purchase of materials. On the contrary, the Act directs them to report the condition of the roads and improvements made thereon to the Roads Engineer, an independent official appointed by the Governor, and to make monthly statements of their expenditure for labor and material to the same official, to be by him approved, if

correct, and handed to the County Commissioners, who are then required to order their payment after they have been properly audited. The Road Engineer, and not the County Commissioners, is made the adviser of the Road Commissioners in the exercise of the charge conferred upon them by the Act over all the county roads and bridges. Not only are the persons directly charged with the care of the roads thus made practically independent of the County Commissioners, but the power of the latter to levy taxes for the use of the roads is now so limited and restricted as in effect to deprive them of their former discretion as to the application of the funds raised by those taxes."

By the first section of the Act of 1908, the County Commissioners of Anne Arundel County "are authorized and empowered to control and regulate the public roads and bridges" of the county subject to the provisions of the Act. The second section authorizes them to levy taxes for the use of the public roads, etc. The third and fourth sections provide for the appointment, by them, of a road engineer, and for his removal from office for incompetency, neglect of duty, etc., and the fifth section provides that he shall have "charge, control and supervision of the working, repairing and reconstructing of the public roads and bridges," and "charge and control of all teams, carts, wagons, machinery, implements and accessories which may be purchased or provided by the County Commissioners for the purposes of the Act," and that he "shall employ such labor, teams and implements as may be by him and by the County Commissioners deemed necessary in connection with the work on public roads and bridges to be paid for by the County Commissioners;" that "He shall not work out or expend upon the roads and bridges of any district of the county a greater amount in any one fiscal year than the amount levied in such district by the County Commissioners as a district road tax, nor shall he expend in any fiscal year upon county roads and bridges a greater amount than is levied and appropriated by the County Commissioners therefor without first obtaining the written permission of

said commissioners so to do;" that "He shall appear before
the County Commissioners at their first meeting in each and
every month and make a full and exact statement to them of
all work done or contemplated by him and of all money ex-
pended;" that "He shall not purchase or order any materials
of any kind whatever without first making requisition there-
for upon the County Commissioners and securing their writ-
ten approval of such requisition, and the County Commis-
sioners may either purchase the materials themselves or di-
rect and authorize the County Road Engineer to do so;" that
"He shall make annually in writing a detailed report to the
County Commissioners of all work done on the public roads
and bridges for the year, together with the names of all per-
sons employed by him or under his direction in performing
such work, and the amount certified to be due them," etc.

From the above recital of the provisions of the Act it is
apparent that it does not resemble in any important particu-
lar the Act of 1900, relating to Baltimore County, and does
not possess any of the essential features upon which this
Court based its decision in *Baltimore County* v. *Wilson.* The
Act of 1908 not only expressly provides that the County
Commissioners shall have the power to "control and regulate
the public roads and bridges" of the county, but authorizes
them to levy the necessary taxes and to provide all teams,
implements and materials, etc., for the use of the roads and
bridges, the building and repairing of which is to be done
under the supervision of the engineer, who is given charge of
the teams and machinery furnished by the County Commis-
sioners, but who is *forbidden to purchase or order any ma-
terials of any kind* without their approval, to whom he is re-
quired to make a report every month of the work done or
contemplated, and the evident intention of the Legislature
was not to relieve the County Commissioners of all liability
for the condition of the public roads and bridges, but to se-
cure in their construction, repair and maintenance the benefit
of skilled knowledge and experience.

In the case of *County Commr's* v. *Duvall,* 54 Md. 350,

JUDGE BRENT, speaking for the Court, said: "The County Commissioners are specially charged by law with the duty of keeping these in good repair and safe for the travel of the public. *Tyson's Case,* 28 Md. 510; *Walter's Case,* 35 Md. 394, and cases above cited. If they fail to do so, and injury results, they are liable in an action at law, not by virtue of any liability at common law, but because they are made so by statute. They are.not permitted to excuse themselves by the fact that the Road Supervisor is also required by law to keep the public road in repair, and may be made liable in a penalty or in damages for a failure to do so. Their obligation is a paramount and pre-existing one, and cannot be discharged by the failure of another to do that which they, the Commissioners, are required by law to do." This statement· of the law was quoted with approval in the recent case of *Adams* v. *Somerset County,* 106 Md. 197.

But while we can not give our assent to the construction of the Act in question contended by the counsel for the appellant, we think the declaration bad for a different reason. The averments are, in substance, that the defendant was negligent in allowing a bridge on one of the public roads of the county to be out of repair and unsafe for use, and that by reason of such negligence, while passing over the same, the plaintiff's horse broke through the bridge and she was thrown out, etc., and are entirely too general. The *narr.* does not specifically state the negligence complained of, that is to say, in what respect the bridge was out of repair or unsafe. It may have been out of repair and unsafe by reason of faulty construction, broken or decayed timbers or planks, or other conditions, and the defendant was entitled to know the particular negligence for which the plaintiff sought to hold it responsible.

Mr. Poe says (Vol. 1, sec. 562): "The declaration should always describe—the tort for which redress is sought, with such a reasonable degree of certainty as will give fair notice to the defendant of the character of the claim or demand made against him, so as to enable him to prepare for his defense." In the case of *Gent* v. *Cole,* 38 Md. 110, this Court

said: "It is one of the first principles of pleading that facts should be stated for the purpose of informing the Court, whose duty it is to declare the law arising upon those facts, and to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse," and, referring to the declaration in that case, that "The statements of the tortious acts complained of, and of the manner in which they effected the injury to the plaintiff, are altogether too general and indefinite to be good on demurrer." And in affirming the ruling of the Court below, sustaining the demurrer to the declaration, this Court, in the case of *Jeter* v. *Schwind Quarry Co.,* 97 Md. 699, said of the declaration: "It does not specify in what respect the place provided for work was unsafe, or how the want of safety caused the death; it does not specify what tools provided for work were unsafe, in what respect they were unsafe, or how their unsafe condition was connected with the accident." The remaining questions in the case are presented by the exception to the ruling of the Court on the prayers. At the close of the testimony the plaintiff offered three prayers and the defendant four, and to the granting of plaintiff's prayers and the rejection of defendants' first, second and third prayers the defendant excepted.

Plaintiff's second prayer was approved by the Court in the case of *Eyler* v. *County Comm'rs,* 49 Md. 257. Plaintiff's third prayer relates to the measure of damages, and is in the usual form where there is evidence tending to show that the injuries sustained were in their nature permanent. There is no such evidence in the record, but as the prayer was not specially excepted to in the Court below, we must assume that there was sufficient evidence to support it.

By plaintiff's first prayer the jury were instructed as follows: "If the jury find from the evidence in the case that the bridge on the public road of Anne Arundel County (if they find that the bridge is a part of the public road), mentioned in the declaration, was in bad condition, and not mended and repaired, and that in consequence of such condition of the

bridge, the horse that the plaintiff was driving broke through the bridge while the plaintiff was traveling over the same on or about the tenth of June, 1908, and in consequence of the horse breaking through said bridge, that the plaintiff was thrown out of the roadcart in which she was riding and was injured; then their verdict must be for the plaintiff; provided they shall further find from the evidence that the plaintiff was using due care and caution at the time."

That instruction amounted to this, that if the bridge was a part of one of the public roads of the county, and was out of repair, and the plaintiff, while using due care, was injured in consequence of its being out of repair, the defendant was liable, and was clearly erroneous, because of its failure to submit to the jury the question of defendant's negligence.

County Commissioners, except where their duties and responsibilities are modified by local laws, are required to keep the public roads and bridges in their county in good repair and safe for the travel of the public, and are liable for injuries resulting from their failure to do so. But we know of no case in this State that goes to the extent of holding that their liability is that of insurers against accidents occurring on the public roads and bridges, and they can only be held liable where the unsafe condition of the road or bridge which caused the accident is due to their *negligence* in respect to the duties imposed upon them by law. *Adams* v. *Somerset County, supra.*

The defendant by its first prayer asked the Court to instruct the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, and the defendant claims that the plaintiff failed to prove that the bridge in question was on one of the public roads of Anne Arundel County. This contention is fullly answered by the testimony of Mr. William K. Boswell, who stated that he was one of the road commissioners of Anne Arundel County, and, as such road commissioner, had charge of the road and bridges in his district, including the road on which the bridge in question was located, and that he rode over and examined the

roads and bridges in his district about once a month, includ-
ing the road and bridge mentioned in this case, and saw that
the same were kept in proper repair. It is not necessary, in
this connection, to refer to the other evidence in the case, as
it is not claimed that the evidence was in other respects leg-
ally insufficient, and we think the prayer was properly re-
jected.

Nor do we find any error in the rejection of
defendant's second and third prayers. There was no evi-
dence in the case tending to show that the plaintiff had been
guilty of contributory negligence. Plaintiff stated that she
had no reason to suspect that the bridge was dangerous, and
was not anticipating an accident. There is not a suggestion
in the evidence in the record that by the exercise of ordinary
care she could have discovered the defect in the bridge, which
all the evidence tends to show was a latent defect, or that she
was not using due care while driving over it.

Witness, James Cusak, who was at the bridge immediately
after the accident, stated that he examined the plank where
the horse broke thorough "and found that it was broken on
the edge where the two planks came together. That the ap-
pearance of the plank on the exposed side did not seem dan-
gerous, but on looking underneath he found that it was con-
siderably decayed."

Witness, Morgan, said that he had seen the bridge before
the accident and it did not seem to need any great repairs,
and that after the accident "he saw the plank that Mrs. Carr's
horse broke through, and while it appeared all right on the
top, it showed evidence of decay on the other side," and Mr.
Boswell the road commissioner, testified, in substance, that
he had ridden over the bridge within a month before the ac-
cident and examined it and did not discover that it was out of
repair or unsafe. To have instructed the jury under such
circumstances that if they found that the plaintiff did not
use due care, or that the accident could have been avoided by
the exercise of due care, she was not entitled to recover, would
have amounted to saying to the jury that there was evidence

in the case from which they could find contributory negligence on the part of the plaintiff, when in fact there was no such evidence.

Where the plaintiff makes out a *prima facie* case of negligence on the part of the defendant and injury resulting from such negligence, without any negligence on her part directly contributing thereto, the burden is on the defendant to show contributory negligence, and in the absence of any evidence tending to show it, it would be error to grant instructions to the effect that if the jury find that the plaintiff was guilty of contributory negligence she cannot recover. *B. & O. R. R.* v. *State, use of Hauer,* 60 Md. 449; *Tucker* v. *Johnson,* 89 Md. 471; *Balt. & Ohio R. Co.* v. *Stumpf,* 97 Md. 91; *United Rys. Co.* v. *Beidler,* 98 Md. 565; *Consol. Gas. Co.* v. *Getty,* 96 Md. 683.

But these prayers are defective for another reason. Because the plaintiff was "well acquainted with the bridge," in the sense that she had frequently driven over it, it would not follow that she knew it was dangerous or did not use due care in crossing it. Nor would it have been proper to instruct the jury that if they found that the accident could have been avoided by the exercise of due care plaintiff was not entitled to recover, without requiring them to further find that *she did not use due care.*

It follows from what we have said that because of the errors in overruling the demurrer to the declaration and in granting plaintiff's first prayer, the judgment below must be reversed, and the case must be remanded for a new trial.

> *Judgment reversed with costs and new trial awarded.*