HARRY T. RICHARDSON *vs.* THE COUNTY COM-
MISSIONERS OF KENT COUNTY AND ISAAC
GIBBS, JR., COUNTY ROAD ENGINEER FOR
KENT COUNTY.

*County Commissioners: powers and duties; liability for condi-
tion of roads; road engineer for Kent County;
authority and liability of—.*

Where county commissioners are given control of public roads,
charged with the duty of keeping them in good repair, and
are supplied with the means of discharging their duty, and
to meet their liability, they are liable for injuries caused by
any defect in a public road due to their negligence.     p. 155

The fact that the road engineer is not appointed by the County
Commissioners or subject to be removed by them does not
control or diminish their responsibility for the condition of
the roads. The Road Engineer of Kent County, by the Act
of 1910, is not given entire charge and control of the roads,
and is not independent of the County Commissioners. He
must report the expenditures to them, and may not expend
more than the amount lent by them, without their permis-
sion.                                           pp. 157-158

The power conferred by Chapter 403 of the Act of 1910, upon
the road engineer of Kent County, does not wholly repeal
sections 1, 2 and 7 of Article 25 of the Code (1912), nor sec-
tion 80 of Article 15 of the Public Local Laws, conferring
broad and ample powers upon the County Commissioners for
the supervision of the county roads; by section 167A of sec-
tion 2 of the Acts of 1910, all laws pertaining to the County
Commissioners and roads theretofore enacted are to remain in
full force and effect, except in so far as they are repealed by
or are in conflict with the provisions of the Act.

                                                pp. 158-159

The Act does not relieve the County Commissioners from lia-
bility for defects in the public roads of the county.     p. 159

The County Commissioners of Kent County are given full
power to levy and appropriate such sum or sums, in excess of

the 20 cents on the $100, as they may deem necessary for repairing and maintaining the public roads and bridges of the county. p. 160

While the Road Engineer of Kent County, under the Act of 1910, is in a sense a public officer, yet in the discharge of his duties he is in a large measure subject to the control of the County Commissioners, and in respect to liability for injuries resulting from the bad condition of the public roads, he is to be regarded merely as the agent of the county. p. 161

*Decided April 8th, 1913.*

Appeal from the Circuit Court for Talbot County (whence the case had been removed from Kent County), (ADKINS and HOPPER, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. Scott Beck,* for the appellant.

*Hope H. Barroll* (with whom were *J. Harry Covington* and *L. Wethered Barroll* on the brief), for the appellee.

*Lewin W. Wickes* filed a brief on behalf of Isaac Gibbs, Jr., County Road Engineer for Kent County, one of the appellees.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the appellant against the County Commissioners and Isaac Gibbs, Jr., County Road Engineer of Kent County, to recover for an injury to his horse while being driven over one of the public roads of said county.

The amended declaration charges that the defendants are bound to keep the public roads of the county in repair and in such condition as to "afford free and safe passage over the same;" that "one of said roads, namely, the public road leading from Langford to St. Paul Church," on the 29th day of May, 1911, "was negligently suffered by the defendants to be out of repair and in an unsafe condition for travel over the same by suffering a large hole to be and remain in the bed of said road for a long time, whereby the plaintiff's

horse, while travelling over said road and being properly driven along" the same with due care, "was seriously injured," etc.

The defendants filed separate demurrers to the declaration, the demurrers were sustained by the Circuit Court for Talbott County, to which the case was removed for trial, and from a judgment in favor of the defendants the plaintiff has appealed.

The County Commissioners base their demurrer upon the ground that by the Act of 1910, Chap. 403, page 920, which was approved April 7th, 1910, and became effective from that date, they were completely divested of all control of the public roads of the county and thereby relieved of responsibility for their condition, while the position of the County Road Engineer is that the statute does not provide a fund out of which he can satisfy a judgment for damages resulting from an unsafe condition of the public roads of the county, and that he is not, therefore, liable.

By sections 1, 2 and 7 of Article 25 of the Code of 1912 the County Commissioners of each county in the State are declared to be a corporation, and are given "charge of and control over the property owned by the county, and over county roads and bridges; they are authorized to make rules and regulations for repairing the public roads, to provide for the payment of the cost of the same, to levy all "needful taxes" and to pay all claims against the county, and section 4 provides that they may sue and be sued. Section 80 of Article 15 of the Code of Public Local Laws also provides that "The County Commissioners shall have the general supervision of the public roads of Kent county, and the work done thereon," etc.

Under these and like provisions it has been uniformly held in this State that as the County Commissioners are given control of the public roads, are charged with the duty of keeping them in good repair and are supplied with the means of discharging that duty and to meet their liability, they are liable for injuries caused by any defect in a public

156 RICHARDSON vs. CO. COMM'RS. KENT CO.

Opinion of the Court.                                    [120

road due to their negligence. *Co. Comms.* v. *Duckett,* 20 Md. 468; *County Com'rs.* v. *Gibson,* 36 Md. 229; *Flynn* v. *Canton Co.,* 40 Md. 312; *County Com'rs.* v. *Duvall,* 54 Md. 350; *Baltimore County* v. *Wilson,* 97 Md. 207; *Adams* v. *Somerset Co.,* 106 Md. 197; *Anne Arundel County* v. *Carr,* 111 Md. 141.

The Act of 1910, Chapter 403, which adds a number of new sections to the Code of Public Local Laws, entitled "Kent County," sub-title "Roads," declares in section 167A that "The County Commissioners of Kent County are authorized and empowered to control, and regulate the public roads and bridges in said county, subject to the provisions of this Act." Section 167B provides that the County Commissioners shall levy a tax of not less than twenty cents on the hundred dollars, to be used for the repair and reconstruction of the public roads and bridges in the county; that they may appropriate or levy such other sums as they may deem requisite for building new bridges and opening new roads, and for repairing and reconstructing the public roads and bridges, and that the taxes so levied and collected shall be "disbursed" by them "upon the roads and bridges" in the manner provided by the Act. Section 167c requires the Governor to appoint some competent person, "who shall have sufficient knowledge of civil engineering to enable him to accurately make surveys, plats, profiles and specifications for the grading, draining, maintenance, repairs and reconstruction of the public roads of said county, and also to do the necessary engineering work for the building or rebuilding of bridges," County Road Engineer for Kent County for the term of six years, at a salary of $1,600.00 a year, and section 167D provides for his removal by the Governor, upon the sworn complaint of ten or more resident tax payers, and after notice and a hearing, for incompetency, neglect of duty or misconduct in office. Section 167E requires the engineer to reside in Kent county "during the term of his office," and then declares that he "shall have entire charge, control and super-

vision of the working, repairing and reconstructing of the
public roads and bridges of Kent county and the purchase
of the material therefor, and shall make all specifications
for the building of new roads and bridges, and shall see that
no obstruction, hindrance or injury is or shall be permitted
upon any road or bridge under his supervision as aforesaid.
He shall employ such help, teams and implements and con-
tract for and purchase such material as he may deem neces-
sary for the working, repairing and reconstructing said roads
and bridges, to be paid for by the County Commissioners;
provided, that he shall not employ any laborer to be paid a
greater amount than one and one-half dollars per day, with-
out first obtaining the written consent of the County Com-
missioners for each person so employed.  He shall. have
charge and control of all teams, carts, wagons and other ma-
chinery and implements which may be purchased by the
County Commissioners for the use of said roads.  He shall
not work out or expend on the roads and bridges of said
county a greater amount in any one fiscal year than the
amount levied by the County Comissioners for the purpose,
without obtaining the permission in writing of said commis-
sioners.  He shall appear before the commissioners at their
first meeting in each and every month, and make a state-
ment to them of the work done, material furnished and money
expended.  He shall examine and certify to the correctness
of all bills and accounts of any work done or materials fur-
nished on any one of the public roads or bridges in Kent
county before the same shall be paid by the County Com-
missioners," and by this section he is further required to "to
make out annually in writing a detailed report to the com-
missioners of all work done on the county roads and bridges
for the year, together with the names of all persons working
on said roads and bridges, or furnishing material," etc.
Section 167H provides that when any person desires to im-
prove any public road "to an extent beyond that contem-
plated by the" engineer, he may apply to the County Com-
missioners who shall thereupon order the engineer to examine

the location, etc., "and if he shall be of the opinion that the public interest will be promoted thereby he shall report his determination to the County Commissioners, setting forth his reasons for such determination, and an estimate of the cost," and if the County Commissioners shall approve the report, they shall direct the expenditure of an amount not exceeding one-half of such estimate, "to be paid out of the road levy or other moneys belonging to the county," and section 167K provides that if the engineer finds it necessary "to open an outlet or water-course through private property" in order to secure "proper drainage of any public road," he shall so inform the County Commissioners, who are authorized to condemn the land necessary for such outlet.

It is quite apparent from this brief review of the important features of the Act, that while it does commit to the judgment and supervision of the County Road Engineer the actual work of repairing and constructing the public roads and bridges of the county, and require him to see that no obstruction is permitted on the same, it does not take from the County Commissioners their general control of the public roads and bridges of the county, which is expressly reserved to them by section 167A. The Road Engineer is authorized to employ such help, teams and implements and to purchase such material as he deems necessary, but he is not authorized to *purchase* the necessary teams, carts, wagons and other implements and machinery, is limited in his expenditures to the amount levied by the County Commissioners and cannot contract for labor at a greater cost than $1.50 per day without the consent of the County Commissioners, to whom he is required to make monthly statements and an annual report of his expenditures, etc. The power thus conferred upon the Road Engineer is not the absolute and unlimited control of the public roads and bridges of the county, but only such as is necessary in order that the county may secure the benefit of his skill and experience in their construction and maintenance. The provisions of the Code of Public General Laws and the Code of Public Local Laws, giving to the County Commissioners broad and ample pow-

ers, are not only not repealed by the Act of 1910, but those powers are preserved by section 167A, and section 2 of the Act declares that all laws relating to the County Commissioners and roads "heretofore enacted" shall remain in full effect and force, except insofar as they are repealed or are in conflict with the provisions of· the Act. To hold, under such circumstances, that the Legislature intended to transfer to the County Road Engineer the powers and duties of the County Commissioners, who represent the corporation, to the extent of relieving them of all liability for defects in the public roads of the county, would require us not only to ignore the settled rule of law in this State, but to disregard the plain and explicit terms of the Act itself.

The fact that the County Road Engineer is not appointed or subject to be removed by the County Commissioners does not determine their control or diminish their responsibility for the condition of the public roads. In *Duckett's case* the road supervisors were elected by the people; in *Gibson's case* the road supervisors were appointed by the County Commissioners, but the Act of 1868, Chapter 299, did not provide for their removal by the County Commissioners, and in *Carr's case* the road engineer, who was appointed by the County Commissioners, was not subject to removal except for incompetency and wilful neglect of duty, upon the sworn complaint of ten or more tax payers of the county, yet in those cases the Court held that the County Commissioners were liable for injuries resulting from their failure to keep the public roads in good condition. The Act of 1868 required the road supervisors to give bond to the State for the faithful performance of their duties, and provided that "said bond may be put in suit for the benefit of any person suffering by the neglect of the said supervisor in keeping the roads in his district in proper order," and it was urged in *Gibson's case* that the right of action against the County Commissioners was thereby taken away, and that a party injured should seek his remedy upon the bond of the supervisor, but the Court held that the remedy upon the bond was

160 RICHARDSON vs. CO. COMM'RS. KENT CO.

Opinion of the Court.                                    [120

cumulative, and that the Act did not exempt the County Commissioners from liability.

Counsel for the appellees rely upon the case of *Baltimore County* v. *Wilson, supra.* In that case JUDGE SCHMUCKER referring to the Act of 1900, Chapter 685, said: "It deprives the County Commissioners of almost the entire charge and control of the roads and imposes that duty upon a new set of officials, for whose appointment it makes provision. Not only are the persons directly charged with the care of the roads thus made practically independent of the County Commissioners, but the power of the latter to levy taxes for the use of the roads is now so limited and restricted as in effect to deprive them of their former discretion as to the application of the funds raised by those taxes." That can not be said of the Act of 1910, for while the County Road Engineer is given "charge, control and supervision of the working, repairing and reconstructing of the public roads," he is not given *entire charge* and *control* of the roads, but the broad power to "control and regulate" the roads is expressly conferred by the Act upon the County Commissioners. He is not independent of the County Commissioners, but is required to report his expenditures to them. He is not allowed to expend more than the amount levied by them without their permission, and they are given full power to levy and appropriate such sum or sums, in excess of the twenty cents on the hundred dollars, as *they* deem necessary for "repairing and maintaining" the public roads and bridges of the county.

The case at bar resembles more closely the case of *Anne Arundel Co.* v. *Carr, supra,* where like powers were conferred upon the Road Engineer for Anne Arundel County and he was charged with similar duties, and where this Court, in answer to the same contention here made, said that it was not the intention of the Legislature to relieve the County Commissioners of responsibility for the condition of the public roads and bridges of that county.

There was no error in the ruling of the Court below on the demurrer interposed by the County Road Engineer. It

RICHARDSON vs. CO. COMM'RS. KENT CO. 161

Md.]                    Opinion of the Court.

is said in 37 *Cyc.* 302: "Under some statutes it is held that
an individual specially damaged by a defect on a highway
can maintain an action against a highway officer who having
funds in his hands negligently fails to perform his duty,
other cases however, taking an opposite view, particularly
where the officer is also liable to a penalty." See also *Hover*
v. *Barkhoof,* 44 N. Y. 113, and *Loomis* v. *Board Town
Auditors,* 75 N. Y. 316. But while the office of the County
Road Engineer for Kent County is created and his duties
are fixed by the statute, and he is in that sense a public
officer (*County Commissioners* v. *Duvall, supra*), yet in the
discharge of his duties he is in a large measure subject to the
control of the County Commissioners, and to that extent, and
with respect to liability for the injuries resulting from the
bad condition of the public roads, should be regarded as the
*agent* of the county. The Act provides for his removal for
incompetency or neglect of duty, but it does not declare that
he shall answer in damages for defects in the highways of
the county. It does not require him to give bond or provide
him with the means to meet such liability, and we can not
assume that the Legislature intended to impose so great a
responsibility. In the case of *Flynn* v. *Canton Co., supra,*
the ordinance required every person or incorporated society
using or occupying any house, store, etc., to remove snow
from the pavements in front of "the respective premises"
used and occupied by them under the direction of the police
officers, and declared that it should be the duty of the police
officers to cause the snow and ice to be removed. The suit
was against the appellee, to recover damages for injuries sus-
tained by the plaintiff in consequence of slipping and falling
upon ice covering the pavement in front of the premises
occupied by the appellee. The Court held that the appellee
was not liable, and JUDGE MILLER, in disposing of the ques-
tion, after referring to the provisions of the ordinance, said:
"The city was then provided with the means and power to
discharge that duty. In the exercise of that power, it saw
fit to provide by ordinance that the owners and occupants of

premises abutting the sidewalks, should either remove the snow and ice therefrom or be charged with the cost of such removal if done by its own officers or employees, besides being subjected to a penalty for each neglect. The property owners were thereby made the *agents* of the city for that purpose, just as the police force was. The two are placed on the same footing with respect to the liability we are now considering. It is made *the duty* of the former to do, it in the first instance, and *the duty* of the latter to cause it to be done in case of neglect or refusal by the former. If a private action for damages lies against the former by reason of neglect to discharge *the duty* imposed by this ordinance, it lies equally against the latter. If it lies against the latter, then every ordinance defining in similar terms *the duties* of police officers, street commissioners and other officials, agents or employees, of the city, subjects them to a like responsibility. We can not think such a result was ever contemplated by the framers of ordinances of this character. We find it supported by no adjudged case, and in our opinion it is not sustained by any sound legal principle. Again the persons upon whom this ordinance operates are provided with no means, and armed with no power adequate to meet the responsibilities that would be thus imposed on them."

The declaration charges that the injury complained of was the direct result of the defendants' negligence, and the only objection urged to it by the County Commissioners is based upon their construction of the Act of 1910. But we hold, for the reasons stated, that that Act does not relieve them of liability for such injuries, or impose that responsibility upon the County Road Engineer. It follows that the Court below erred in sustaining the demurrer of the County Commissioners and that the judgment, which is in favor of *both* defendants, must be reversed.

*Judgment reversed, with costs and a new trial awarded.*