## COUNTY COMMISSIONERS OF HOWARD COUNTY
### *v.* LARS T. LEAF.

[No. 8, October Term, 1939.]

84

*Decided October 25th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Jerome A. Loughran* and *W. Clinton McSherry,* for the appellants.

*L. Wethered Barroll,* with whom were *Jacob Rohrback* and *Julius P. Robinson* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from a judgment entered by the Circuit Court for Frederick County upon the verdict of a jury in favor of Lars T. Leaf against the Commissioners of Howard County. The suit was first instituted in Howard County, and, after a demurrer to the plaintiff's declaration had been overruled, the case was removed to Frederick County for trial.

The first question for consideration upon the record relates to the correctness of the court's action in overruling appellants' demurrer to the declaration.

During the trial, appellants reserved exceptions to several rulings of the trial court upon the admissibility of evidence and also excepted to the court's rulings upon the prayers. However, the exceptions to the adverse evidence rulings have neither been argued in appellants' brief, nor referred to in oral argument before this court, and will, under section 4 of Rule 39 of this court, be treated as abandoned. See also *Wilkerson v. State,* 171 Md. 287, 289, 188 A. 813. Therefore the only question we are called upon to consider, in addition to the ruling upon the demurrer to the declaration, relates to the correctness of the trial court's action in its rulings upon the prayers. These questions will be considered in the order mentioned.

It is alleged in the declaration that appellants, on May 27th, 1936, in disregard of their duties and obligations imposed by law, negligently and carelessly allowed and permitted one of the roads which was under their charge, leading from Annapolis Junction to Savage, to be out of repair and to be negligently maintained and remain unmended in an unsafe and dangerous condition, in that there was a hole in said road on the north side thereof, of a dangerous depth, width and breadth, and, as a result of appellants' negligence, the plaintiff, on the date mentioned, while using due care and riding in an automobile owned, operated and controlled by one Elmer Hazelton, proceeding on said road past the property of Lloyd W. King, as a passenger in said motor vehicle,

which was so operated that one of its front wheels dropped within the hole, and the machinery of the vehicle was so damaged thereby that it ran against a stationary pole along the side of the road; that the plaintiff was thereby severely, seriously, and permanently injured, suffered excruciating pain, and has been incapacitated in earning his livelihood, and also incurred doctors' and hospital bills and has been otherwise seriously injured; that all of said wrongs and injuries complained of were the result of the defendants' negligence and not the consequence of any negligence on the part of the plaintiff contributing thereto.

Appellants' argument in support of their demurrer to that declaration rests upon the contention that, by the enactment of chapter 425 of the Acts of 1933, the Legislature relieved the Commissioners of Harford County from the maintenance, repair, supervision, and control of the public roads within its borders; that since they are relieved by this Act from the control, maintenance, repair, and supervision of the roads within the county, and it is implicit in the declaration that the road upon which the plaintiff was injured is a public road, they are likewise relieved from all liability for accidents resulting from their negligence in failing to repair and maintain such roads in a reasonably safe condition for public travel. If this contention is sustainable, the plaintiff and all others in a similar situation must bear the loss, as no relief may be had against the State Roads Commission, a department of the state government. It is unnecessary to discuss the freedom of the Commission of liability for tort, as this is conceded. The court accepts and must enforce the law, but before the liability of the county for an injury negligently inflicted upon a person in the lawful and careful use of a public highway of the county may cease, a clear legislative expression of such an intention should be found. Appellants rely upon article 56 of the Code of Public General Laws (Supp. 1935), title Licenses, sub-title, Part VII, Gasoline Tax, section 212A *et seq.,* and the disposition of

what is called the "One and One-Half Cent Lateral, County and Municipal Road Gasoline Tax Fund," article 89B of Code (Supp. 1935), sections 7A, 7B, 7C, 7D, 7E, 7F, and *Id.*, pp. 767 and 1158.

The salient provisions of the statutory law may be thus stated.

After certain deductions, a designated proportion of the proceeds of the tax are credited to the account of the State Roads Commission, to be paid out of the Treasury of the State upon the warrant of the Comptroller, and shall be allocated by the State Roads Commission to the counties of the state in the proportion which the public road mileage of the several counties bears to the entire public road mileage in the counties of the state, for the following uses and purposes:

(a) For the construction of lateral roads as a part of the State Roads system (includes bridges); after recommendations from County Commissioners.

(b) For the construction, reconstruction and maintenance of county roads or streets of incorporated towns, municipalities or special taxing areas located in the respective counties of the state, and in connection therewith to build and maintain any bridges on such roads or streets, or to maintain those existing.

(c) For debt service, or to meet interest, sinking fund or maturity requirements, with respect to bonds or other evidences of debt issued by the several counties, municipalities or special taxing areas, for road or street improvements upon the recommendation of the County Commissioners. Section 7A.

Before the time of the annual tax levy, and upon the second Monday of every year, and thereafter from time to time, the State Roads Commission shall seek the recommendations of the County Commissioners, or other duly constituted public authorities of the several counties, having jurisdiction over roads and streets, with reference to:

(1) What part of the funds allocated shall be expended for the construction of lateral roads as part of the State Roads system.

(2) What part shall be expended for the construction, reconstruction and maintenance of county roads, or bridges or municipal streets.

(3) What part shall be expended for debt service.

(4) What specific roads shall be constructed, reconstructed, or maintained under the provisions of this section, and of what material and by what method.

(5) The manner and amount in which funds allocated shall be divided and expended.

(6) The base rate of pay for unskilled labor in connection with such public work.

The County Commissioners or other constituted authority shall have the right to submit at any time and from time to time recommendations with respect to these provisions.

Should the State Roads Commission be unable to concur in the recommendations of the County Commissioners or other constituted local authority, it shall notify the recommending authority in detail as to the reasons why such approval is withheld, and the recommending authority shall thereupon, if requested, be entitled to a formal hearing before final action by the State Roads Commission. Section 7A.

All Boards of County Commissioners are relieved from the requirement of existing law to levy a minimum amount or a minimum rate for road maintenance purposes, and the portion of all public local laws making such requirements is suspended. Section 7F.

By sections 7B, 7C, 7E, various powers and duties are conferred on the State Roads Commission in respect of the performance of these powers and duties during the temporary effectiveness of the sections cited. Acts of 1935, ch. 465, sec. 4; Acts of 1937, ch. 341.

Under article 89B, section 29, the State Roads Commission may maintain in good condition and keep in proper order and repair, "so far as funds for such purposes are available, all State roads and bridges heretofore or hereafter constructed or improved by it under the provisions of this Article or which now or at any

time may be placed or come under its control; and to such end the said State Roads Commission shall have power and authority to adopt such method or methods for the systematic repair and maintenance of such roads as it may from time to time deem proper and advisable." And by section 5 of article 89B provisions are made for the permanent acquisition of county roads, in whole or in part, by the State Roads Commission, and their later maintenance by that body.

These and other provisions make it clear that the sections relied upon by the appellants are of a temporary nature, and for their continuance further legislation is necessary. In addition, the expenditures by the State Roads Commission are of a special fund, and the application of the funds is ultimately for the decision of the Commission; and there is no requirement that such expenditure of such special fund shall be exclusively to one or more of the highway purposes of a county, nor cover the whole field of repair and maintenance, so as to relieve the County Commissioners of all duty and responsibility. The statute negatives such an argument when it simply relieves the County Commissioners, while they are temporarily receiving the tax, of the obligation to levy, under local laws, a minimum amount or rate for road maintenance purposes. Section 7F. So, the powers, and, consequently, the duty, of the County Commissioners to levy for all necessary road purposes subsists. The agency of the State Roads Commission under the special statute is for the benefit of the county as the principal, and is not to the exclusion of the principal's duty and power to keep the county highway safe for public travel. The suspension of the obligation to levy a minimum amount or rate is simply to relieve the Board of County Commissioners from the necessity of levying more than is required. The amount of the tax apportioned to a county may be inadquate for any one of the permitted purposes for which it may be applied, and could it be successfully contended that this inadequacy would, by force of the statute, exonerate the municipal corporation from

the discharge of its primary and permanent duty in that regard?

If, as alleged in the plaintiff's *narr*, the road was under the charge of the Commissioners of Howard County, who, in disregard of their duties and obligations imposed by law, negligently allowed and permitted it to become in such state of disrepair and remain unmended in a dangerous condition that the plaintiff, who was a passenger in the Hazelton car, without control of its movements and with no knowledge of the defective condition of the road, was thereby injured, the failure of the Roads Commission to perform its duty did not relieve appellants of their duty which the statute imposes upon them, for the County Commissioners of each county are a corporation with full power to appoint road supervisors and all other officers, agents, and servants required for county purposes, not otherwise provided for by law or by the Constitution, and they shall have charge of and control over the property owned by the county, and over county roads, and bridges, and, wherever in their opinion the public interests require or will be thereby advanced, may commit the whole matter of grading and construction of public roads and repairs thereof, and the construction and repairs of public bridges, to the charge of competent engineers. Code (Supp. 1935), art. 25, secs. 1, 2, 14; *County Commissioners of Anne Arundel County v. Duckett,* 20 Md. 468; *Calvert County v. Gibson,* 36 Md. 229; *Baltimore County v. Baker,* 44 Md. 1, 9; *Eyler v. Allegany County,* 49 Md. 257, 269; *Anne Arundel County v. Duvall,* 54 Md. 350, 354.

The position here taken finds support in the analogous case of *Richardson v. Kent County,* 120 Md. 153, 87 A. 747, which distinguishes *Baltimore County v. Wilson,* 97 Md. 207, 209, 54 A. 71, 56 A. 596; *Anne Arundel County v. Carr,* 111 Md. 141, 73 A. 668; *Kent County v. Pardee,* 151 Md. 68, 72, 134 A. 33. It finds further support in the rule that the duty imposed upon the county is not affected by the fact that a private corporation has contracted to keep the road or bridge in repair, and that the

disrepair is due to the private corporation. *Eyler v. Allegany County,* 49 Md. 257, 269; *Balto. &. O. R. Co. v. Howard County,* 111 Md. 176, 184, 73 A. 656; *Adams v. Somerset County,* 106 Md. 197, 201, 66 A. 695; *Calvert County v. Gibson,* 36 Md. 229; *Baltimore County v. Baker,* 44 Md. 1, 9; *Anne Arundel County v. Duckett,* 20 Md. 468, 475; *Richardson v. Kent County,* 120 Md. 153, 155, 87 A. 747; *Harford County v. Hause,* 106 Md. 439, 442, 67 A. 273; *Allegany County v. Seaber,* 123 Md. 527, 530, 91 A. 702; *Anne Arundel County v. United Rys. Co.,* 109 Md. 377, 385, 72 A. 542.

It is further urged that the declaration is insufficient because it fails to allege that the unsafe condition of the road was known to appellants, who after a reasonable opportunity had failed to repair it prior to appellee's injury, but with this contention we do not agree. It is alleged that the condition was due to the negligence and carelessness of appellants in failing to make repairs, but they would not be chargeable with negligence in violation of such duties unless the proof showed they had actual or constructive notice of the unsafe condition. Since, therefore, the allegations of the declaration charge appellants with a liability which could only be predicated upon proof of actual or constructive notice on their part, the failure to set out in the declaration the nature of the proof in this regard would not vitiate it, and since it is our conclusion that chapter 425 of the Acts of 1933, heretofore referred to, does not relieve appellants from liability for negligence in permitting the public roads under their control to become unsafe and dangerous to the public using such roads, the demurrer to the declaration was properly overruled.

It is contended that the trial court erred in refusing appellants' A prayer, which sought to withdraw the case from the consideration of the jury, because of a legal insufficiency of evidence, entitling the plaintiff to recover, and its B prayer for a directed verdict, because the injury complained of was caused solely by the negligence of the defendant, and its C prayer, which sought

an instruction that the evidence was legally insufficient to show that appellants had notice, or could have had notice, of the dangerous condition of the road prior to the accident, in time to repair it, and the verdict of the jury must be for the defendant. In considering the correctness of those rulings, it becomes necessary to refer to the evidence.

Appellee, at the time of the accident, resided at Annapolis Junction, and was employed in Washington, D. C., as a steamfitter. At 5:30 A. M., on May 27th, 1936, when the road was dry and the weather clear, he was riding in the automobile of Elmer Hazelton over the road leading from Annapolis Junction toward the Washington Boulevard, *via* the Town of Savage in Howard County. There was testimony in the case which, if believed by the jury, would have enabled them to find that the road in question was of macadam surface, approximately fourteen feet wide with gravel shoulders; that near the right side of the road at the time of the accident there was a hole in the surface from twelve to fifteen inches in width and twenty to twenty-two inches in length, and six inches in depth; that Hazelton's motor vehicle was being operated at a reasonable speed in the center of the roadway, but, shortly before reaching the hole in the road, which hole was unknown to Leaf, Hazelton, in order to permit a bakery truck to pass him on the left, was suddenly required to drive to the right. The plaintiff observed the hole when Hazelton's car was within ten or fifteen feet of it, and almost immediately one of the car wheels struck the hole, which was located opposite the residence of a Mr. King and almost at the crown of a hill, from which point there was an estimated downgrade of eighteen degrees. From the time the automobile wheel struck the hole, Hazelton, its owner and driver, had no further control over it, and although he did what he could to stop it, it zig-zagged, first to the left of the road down the incline and later to the right, into a ditch four feet in depth, at which time it struck a stationary pole; the accident happened very quickly and Leaf, the

plaintiff, had no opportunity to render any assistance in stopping the vehicle, and, as a result of the crash he was rendered unconscious and severely and seriously injured, was required to remain several days in a hospital and incur expenses for hospitalization and physicians, and to some extent he still suffers from injuries then incurred.

John W. Christopher, who resided at Miller's Crossing, gave testimony to the effect that he frequently passed over the road in question, and there had been a hole next to King's gate "quite a long time—getting larger all the time"; that it was a short distance from the edge of the road and was on the right-hand side of the road going toward Savage, and he complained to an official of Howard County several times; that Mr. Langford was the name of the man he spoke to about a month before the accident, and he also spoke to his father about it, asking that the hole be fixed, because he had "stuck a couple of times" with a loaded truck on it. He stated that it was three or four weeks before Leaf's accident that he made complaint to Langford. Langford testified that he was employed by the State Roads Commission, and the Commission generally worked in co-operation with Howard County, and he had performed those duties since 1934, taking orders from the district engineer, whose superior was the chief engineer of the State Roads Commission; further that he regarded the road in question as a lateral road, which was a feeder for a primary road; that the road was taken over by the Commission under chapter 425 of the Acts of 1933 and since that time had been maintained by the State, but previously it was a county road; that the Commissioners did not repair the road. However, it was stipulated in the record by counsel that the accident happened on a "public road in Howard County."

Hazelton, owner and driver of the wrecked car, stated that he and Leaf had been riding back and forth to their work in Washington about two weeks at the time of the accident, and he had seen the hole there "a month or

two months previously," and, on cross-examination, the same witness stated, after describing the hole, that it had been in that condition a couple of months or more, but he could not say whether he struck it before his car was wrecked; that as he passed over the crown of the hill his car got out of control and remained so until Leaf was injured.

Langford, a junior assistant highway engineer for the State Roads Commission, testified that if complaint had been made to him about the existence of the hole prior to the accident, he did not recall it. The three Commissioners of Howard County and their clerk denied that at any time prior to the accident they had received complaint that the hole existed. There was other testimony given by persons who said they had observed the road prior to the time of the accident, and had found it in very good condition; but its actual condition, also the length of time such condition has existed, were questions for the jury to resolve.

The rule is well settled that in actions for injuries due to alleged negligence, where facts are left by the evidence in dispute, or where fair minds might draw different conclusions, the case should be submitted to the jury, because courts are cautious not to invade the jury's province. *Maryland, D. & V. R. Co. v. Hammond,* 110 Md. 124, 72 A. 650; *United Rys. & Electric Co. v. Carneal,* 110 Md. 211, 72 A. 771; *Hanrahan v. Baltimore,* 114 Md. 517, 80 A. 312; *United Rys. & Electric Co. v. Dean,* 117 Md. 686, 84 A. 75; *Burke v. Baltimore,* 127 Md. 554, 96 A. 693; *Hagerstown & F. R. Co. v. State,* 129 Md. 318, 99 A. 376; *State, use of Chenoweth v. Baltimore Contracting Co.,* 177 Md. 1, 6 A. 2nd 625.

It being our conclusion that chapter 425 of the Acts. of 1933 did not have the effect of relieving appellants from liability for negligence causing injuries to persons using a public highway of the county and exercising due care, the action of the trial court in refusing their A prayer for a directed verdict was proper, since it cannot be said that a reasonable mind could not have

reached the conclusion that plaintiff was injured by reason of the defective and unsafe condition of the highway which appellants were charged with maintaining in a reasonably safe condition for public use.

Their B prayer, which sought to withdraw the case from the consideration of the jury upon the ground that the evidence was legally insufficient to show that plaintiff's injuries were caused solely by appellants' negligence, was likewise properly refused, for it is undisputed that the plaintiff was not the operator of the vehicle nor had the slightest control over its management and operation. The jurors could have found, not illogically, that plaintiff's injuries were caused by the concurrent negligence of appellants and Hazelton, the owner and driver of the car, in which case he was not bound to show that his injuries resulted solely from appellants' negligence, since if his injuries had been caused by the concurrent negligence of appellants and the driver of the car, the plaintiff would still have been entitled to recover in the absence of a finding that his own negligence had contributed to cause his injuries. *Brawner v. Hooper*, 151 Md. 579, 135 A. 420; *Lange v. Affleck*, 160 Md. 695, 155 A. 150; 9 *Blashfield, Cyclopedia of Automobile Law* (Perm. Ed.), sec. 5968.

Nor was any error committed in the refusal of appellants' C prayer which sought a directed verdict because of lack of legally sufficient evidence to show that appellants had notice or could have had notice of the dangerous condition of the public road before the accident in time to make repairs to it. As stated in 5 *Blashfield, Cyclopedia of Automobile Law* (Perm. Ed.), sec. 3293:

"A presumption of knowledge of the existence of dangerous conditions in the street may arise from the length of time they have been allowed to continue.

"Thus, where for a period of two months the planks upon a bridge have been so loose that they rattle or spring out of their place when vehicles pass over them, and when in this condition it is dangerous to walk or

drive upon the bridge, the municipality is chargeable with notice of such condition as respects its liability to a motorist injured by reason of such loose planks.

"A municipality has a greater duty to observe the condition of its streets or to know of the existence of dangerous defects therein than an ordinary citizen or traveler has who uses them. Public authorities are under a measure of active duty to inspect, so as to discover and know of the hazards of the roads, the care of which is imposed upon them. They owe the duty to inspect the weakening of a culvert and its consequent inability to support a loaded truck."

See also *Maryland State Fair v. Henderson,* 164 Md. 587, 165 A. 698, and authorities there cited; *Moore v. American Stores Co.,* 169 Md. 541, 551, 552, 182 A. 436; 46 *C. J.,* page 540, (12)c.

While it may be conceded that the evidence fails to charge appellants with actual notice of the condition of the public road, there is evidence in the record from which the jury could have concluded that the defect complained of had existed for at least two months. Although there is no showing as to the extent to which the road was used by the public, inasmuch as it was paved with macadam, it is a fair inference that its use by the public was at least general, and in view of the evidence, the trial court would not have been justified in holding as a matter of law that the condition of the road had not existed for a sufficient length of time to charge appellants with constructive notice of its dangerous condition.

Appellants' second to seventh prayers, inclusive, likewise appellee's first and second prayers, were granted as offered. It is not contended that appellee's prayers are erroneous, if in fact it was proper to submit the case to the jury, and our consideration of them convinces us of their correctness, also that by them and appellants' granted prayers the issues were fairly submitted for the jury's determination.

*Judgment affirmed, with costs to appellee.*